431 A.2d 966

**Anthony E. D'AMBROSIO, Jr., Appellant,**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY.**

Supreme Court of Pennsylvania.

Argued April 22, 1981.

Decided July 8, 1981.

Joel S. Robbins, Brookhaven, for appellant.

Timothy B. Barnard, Media, for appellee.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is a dispute over property insurance coverage. It is usual in that the insured seeks to recover that sum he had expected the insurer to pay for repairs to his property under the parties' contract of insurance. However, it is unusual in that the insured also seeks damages for "emotional distress" and punitive damages because of the insurer's alleged "bad faith" conduct in denying the insured's claim. At issue on this appeal is whether, in light of the Unfair Insurance

Practices Act, this Court should permit an action seeking these latter, additional forms of damages.

## I

The insured, appellant Anthony D'Ambrosio, commenced the present action on June 28, 1977, by filing a two-count complaint, one in assumpsit and the other in trespass, against his insurer, appellee Pennsylvania National Mutual Casualty Insurance Company. In his count in assumpsit, appellant alleged that on June 12, 1976, his motor boat and outboard motor were damaged as a result of a severe storm. Appellant claimed that the damage was covered by the parties' contract of insurance then in effect, but that appellee had failed to honor his claim. Thus in his count in assumpsit appellate sought a money judgment of $932.23, reflecting the cost of necessary repairs to the boat, as well as interest, attorney's fees and costs.[1]

In his court in trespass, appellant alleged that his claim had been "summarily denied." Appellant averred that "[a]fter several and repeated phone calls by the plaintiff to defendant, the plaintiff was able to ascertain the reason for the denial of the claim by the defendant, said reason being that an adjuster hired by defendant had reached the conclusion that the claim submitted by the plaintiff was improper." According to appellant, he asked appellee for "the exact information which the defendant had received which led it to believe that the claim was improper. . . ." Appellant did not specify the result of this inquiry. He did aver that he had submitted to appellee written statements from the mechanic who had repaired the property and a letter from the party to whom appellee's adjuster had spoken. In appellant's view, "said letter indicat[ed] that the adjuster was wrong in the conclusions he had reached, and had not based his conclusions on probative evidence." Appellant alleged that, after further demands, appellee continued to refuse the claim, "even though the defendant has not been

1. This count is not now before us. The trial court has directed appellee to file an answer.

able to produce any information whatsoever which would in any way indicate that their original investigation was valid." [2] Appellant thus sought "compensatory damages . . . in an amount in excess of Ten Thousand Dollars ($10,000.00)

2. Appellant's count in trespass then stated:

"23. By refusing to pay the claim after the submission of the new information, and after it was shown that the Defendant's initial investigation was incorrect, Defendant has indicated and insinuated that the Plaintiff submitted a fraudulent claim, such fraudulent claim constituting a crime in the Commonwealth of Pa. and the State of New Jersey.

24. The conduct of the Defendant in refusing to pay the claim of the Plaintiff, after having sufficient evidence to show that the claim of the Plaintiff was legitimate and proper and covered by the policies in question, was both outrageous and malicious, constituting oppressive behavior.

25. As a result of the aforementioned outrageous, malicious, and oppressive behavior of the Defendant in handling this claim, Plaintiff herein has suffered severe mental distress, manifested by a feeling of anxiety over his credit status and standing in his community, both in Delaware County, and in New Jersey.

26. Furthermore, since the Plaintiff in question herein is a Police Officer employed by the Township of Upper Darby, further anxiety and mental distress has been inflicted upon the Plaintiff herein by the Defendant since the allegations by the Defendant that the Plaintiff had submitted a fraudulent claim are directly designed to impugn the professional standing and reputation of the Plaintiff herein.

27. As a result of the denial of the payment of the claim by the Defendant herein, the Plaintiff has been subjected to repeated demands by the party who repaired the boat in question, for the money due said repair shop.

28. The Plaintiff herein is unable to pay the repairs in question, this being the very reason why the Plaintiff herein had insurance on his boat and motor to begin with.

29. As a result of not being able to pay the claim in question, because of the denial of the claim by the Defendant, the Plaintiff had been subjected to further embarrassment, anxiety and humiliation, both to his reputation in the community and to his credit status.

30. Because of the intimation of the dishonesty by the Defendant against the Plaintiff herein, the Plaintiff has further suffered great emotional distress, and loss of standing in his community.

31. Because of the denial of the claim by the Defendant, the Plaintiff's credit status and reputation may be irreparably harmed and impaired, to the further financial and emotional distress and loss of the Plaintiff herein.

32. The actions of the Defendant under this policy were such as to be a breach of contract amounting to a willful, wanton and malicious tort."

and punitive damages ... in an amount in excess of Ten Thousand Dollars ($10,000.00), plus all costs and attorneys fees."

Appellee filed preliminary objections to the count in trespass, in the nature of a demurrer. After argument, the Count of Common Pleas of Delaware County sustained the preliminary objections and dismissed the count in trespass. Appellant did not request leave to amend.

On appeal, the Superior Court divided evenly and affirmed. This Court granted allowance of appeal.

## II

In arguing for the reinstatement of his count in trespass, appellant would have this Court adopt the position of the Supreme Court of California which, in *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), held that where an insurer

"fails to deal *fairly and in good faith* with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing."

9 Cal.3d at 574, 108 Cal.Rptr. at 485, 510 P.2d at 1037 (emphasis in original). Appellant's argument is based on his belief that such an action "is the only remedy which will prevent insurance industry abuse in handing first party claims, and which will place the consumer on more equal footing with insurers." [3]

■ Although the seriousness of "bad faith" conduct by insurance carriers cannot go unrecognized, our Legislature has already made dramatic, sweeping efforts to curb the bad faith conduct. Section 4 of the "Unfair Insurance Practices Act" provides:

"No person shall engage in this state in any trade practice which is defined or determined to be an unfair method of

---

3. Brief for Appellant at 5. A minority of jurisdictions have followed *Gruenberg*. See, e. g., *Bibeault v. Hanover Insurance Co.*, R.I., 417 A.2d 313, 318 n.4 (1980) (citing cases).

competition or an unfair deceptive act or practice in the business of insurance pursuant to this act."

Act of July 22, 1974, P.L. 589, 40 P.S. § 1171.4 (Supp. 1980). Section 5 of the Act, 40 P.S. § 1171.5, defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include numerous forms of conduct. Most relevant here are the fifteen "unfair claim settlement or compromise practices" set forth in subsection (10).[4]

4. That section provides:
"Any of the following acts if committed or performed with such frequency as to indicate a business practice shall constitute unfair claim settlement or compromise practices:

(i) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

(ii) Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.

(iii) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

(iv) Refusing to pay claims without conducting a reasonable investigation based upon all available information.

(v) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed and communicated to the company or its representative.

(vi) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

(vii) Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons.

(viii) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

(ix) Attempting to settle or compromise claims on the basis of an application which was altered without notice to or knowledge or consent of the insured of such alteration at the time such alteration was made.

(x) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made.

(xi) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants to induce or compel them to accept settlements or compromises less than the amount awarded in arbitration.

(xii) Delaying the investigation or payment of claims by requiring the insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of

These statutory prohibitions are enforced by the Insurance Commissioner of Pennsylvania, who is empowered to "examine and investigate the affairs of every person engaged in the business of insurance in this State" to determine whether the Act has been violated. § 7, 40 P.S. § 1171.7. Where, after a hearing, the Commissioner finds a violation, he may impose sanctions, including a cease-and-desist order and suspension or revocation of license. § 9, 40 P.S. § 1171.9. The Commissioner also may seek judicial imposition of a civil penalty of up to $5,000 for each knowing violation. § 11, 40 P.S. § 1171.11.

There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action. As one critic of California's approach has observed,

"[t]he California courts have created this 'new tort' in an obvious attempt to afford more protection to insureds. However, it has not really been established that there is a need of this additional protection. * * * State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis. Likewise, state legislatures are capable of

formal proof of loss forms, both of which submissions contain substantially the same information.

(xiii) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage or under other policies of insurance.

(xiv) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

(xv) Refusing payment of a claim solely on the basis of an insured's request to do so unless:

(a) The insured claims sovereign, eleemosynary, diplomatic, military service, or other immunity from suit or liability with respect to such claim;

(b) The insured is granted the right under the policy of insurance to consent to settlement of claims; or

(c) The refusal of payment is based upon the insurer's independent evaluation of the insured's liability based upon all available information."

prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations." Kircher, Insurer's Mistaken Judgment—A New Tort?, 59 Marq.L.Rev. 775, 786 (1976). Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.

■ Our conclusion that the Unfair Insurance Practices Act serves adequately to deter bad faith conduct applies not only to appellant's attempt to recover punitive damages but also to his attempt to recover damages for "emotional distress." An award of punitive damages unquestionably is a deterrent device, see Restatement (Second) of Torts § 908 (1965); Restatement (Second) of Contracts § 369 (Tent. Draft No. 14, March 1, 1979), one which is unnecessary in view of the present legislatively-created regulatory scheme. And in the vast majority of cases an award of emotional distress damages would accomplish no more than is already accomplished by the Unfair Insurance Practices Act. Dean Murray has observed:

> "While it is often suggested that such damages, when granted, are compensatory rather than punitive, the impression is often created that they are granted more for the purpose of discouraging the contract breaker through the use of a deterrent than attempting to evaluate mental distress on a pecuniary basis. In addition, it is difficult, if not impossible, to draw an incisive line between compensatory and punitive damages."

Murray on Contracts § 232 at 472 (1974). Similarly, Professor Dobbs has stated:

> "Probably there is some thought, too, that mental distress damages closely resemble punitive damages in many instances and that such damages should be denied in all those cases where punitive damages are denied."

Dobbs on Remedies § 12.4 at 819 (1973).[5] Thus we hold that the count in trespass for alleged bad faith conduct of an insurer, which seeks both punitive damages and damages for emotional distress, must be rejected.

That the creation of such a cause of action is unwarranted is further demonstrated by appellant's complaint. According to appellant, appellee violated its duty of good faith when it "breached the contract, refused to tell the insured why it did, and refused to reconsider the claim even when presented with additional evidence."[6] Appellant's current characterization of appellee's conduct varies significantly from the allegations of his complaint.

Contrary to appellant's present assertion, there is nothing in appellant's complaint to suggest that when appellee allegedly "breached" the insurance contract it "refused to tell the insured why it did . . . ." In fact, appellant alleged in his count that, after the claim had been denied, he made "several and repeated phone calls" to the Defendant and "was able to ascertain the reason for the denial of the claim . . . ."

Similarly, appellant's complaint fails to support his present claim that appellee "refused to reconsider the claim even when presented with additional evidence." The complaint establishes merely that appellant had submitted "evidence" gathered as a result of his own investigation, along with a renewed request for payment, and that the claim was denied.

Also dubious is appellant's assertion that appellee "insinuated that the insured was submitting a fraudulent claim."[7] The first reference to fraud appears in Paragraph 23 of the complaint (reproduced supra at note 2) which states:

5. The possibility cannot be ruled out that emotional distress damages may be recoverable on a contract where, for example, "the breach is of such a kind that serious emotional disturbance was a particularly likely result." Restatement (Second) of Contracts § 367 (Tent. Draft No. 14, March 1, 1979). The present record falls far short of establishing such a breach.

6. Brief for Appellant at 8.

7. Brief for Appellant at 3.

"By refusing to pay the claim after the submission of the new information, and after it was shown that the Defendant's initial investigation was incorrect, Defendant has indicated and insinuated that the Plaintiff submitted a fraudulent claim, such fraudulent claim constituting a crime in the Commonwealth of Pa. and the State of New Jersey."

This allegation reveals no more than that appellant has subjectively inferred that appellee's denial of the claim was an "indicat[ion]" and an "insinuat[ion]" that a fraudulent claim was submitted. Further references to fraud, in Paragraphs 26 and 30, do not suggest otherwise.

Appellant's present characterization of the facts must be disregarded. The order sustaining preliminary objections will be reviewed "solely on the allegations of the complaint, . . . " accepting as true "every well-pleaded, material, relevant fact, and every inference fairly deducible therefrom . . . ." 9 Standard Pennsylvania Practice, Ch. 40, § 73, p. 390 (rev.ed. 1962). Accord, *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976) (citing cases). Cf. *In re Legislative Route 1018*, 422 Pa. 594, 595 n.1, 222 A.2d 906, 907 n.1 (1966) (facts "injected" in briefs not appearing in stipulation "will not be considered").

Surely the present record, which reveals that appellee investigated appellant's claim and supplied appellant with its basis for denial, provides no factual support for the suggested cause of action. For even those jurisdictions which have recognized a cause of action for bad faith conduct have cautioned that "[i]f the claim is 'fairly debatable,' no liability in tort will arise," *Bibeault v. Hanover Insurance Co.*, R.I., 417 A.2d at 319, and that "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 691, 271 N.W.2d 368, 376 (1978). See also Burton, Breach of Contract and the Common Law Duty to

Perform in Good Faith, 94 Harv.L.Rev. 369, 373 (1980) ("[g]ood faith performance ... occurs when a party's discretion is exercised for any purpose within the reasonable contemplation of the parties at the time of formation...").[8]

Our review satisfies us that appellant has an adequate remedy in assumpsit and that the count in trespass, seeking damages for the alleged bad faith conduct of appellee, was properly dismissed.

Order of the Superior Court affirmed.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

NIX, J., joins in this opinion and filed a concurring opinion.

LARSEN, J., filed a dissenting opinion in which KAUFF-MAN, J., joins.

LARSEN, Justice, dissenting.

I dissent.

**8.** Appellant would also have this Court reinstate the count in trespass on the theory that the bad faith conduct alleged in the count is sufficient to set forth the tort of "Outrageous Conduct Causing Severe Emotional Distress," as defined by section 46(1) of the Restatement (Second) of Torts (1965). Section 46(1) provides:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

This is hardly a case of "extreme and outrageous" conduct. As Comment d to section 46 points out,

"[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!' "

Cf. *Forster v. Manchester*, 410 Pa. 192, 189 A.2d 147 (1963) (claim investigator's surveillance activities were of "social value" and not "outrageous").

Acting in bad faith, insinuating fraud, the insurance company denied the policyholder's claim after the policyholder's boat was damaged in a storm. Policyholder, a police officer, suffered mental distress as a result.[1]

These facts give rise to a tort—bad faith refusal to make payments due under an insurance policy—wholly independent of any cause of action in contract, and damages for mental distress are recoverable. *See Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973). Traditional contract remedies are inadequate in this area. *See* Mann & Keintz, *Judicial Approaches to the Awarding of Extra-Contract Damages for Breach of Insurance Contracts*, 661 Ins.L.J. 95 (1978). *See also* Keintz & Mann, *Extra-Contract Damages for Breach of Insurance Contacts: The Statutory Approach*, 660 Ins.L.J. 7 (1978). A tort action assures a policyholder more complete recovery, protects a policyholder with limited resources who would otherwise be precluded from suit because of small contract claims, and deters the insurance company from acting in bad faith. *See* Comment, *Extracontractual Insurance Damages: Pennsylvania Insureds Demand a "Piece of the Rock"*, 85 Dick.L.R. 321, 330–31 (1981).

The policyholder should recover for mental distress caused by the insurance company's bad faith conduct because insurance is purchased to provide *peace of mind*. *See Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 433–34, 426 P.2d 173, 179, 58 Cal.Rptr. 13, 19 (1967). Insurance companies exploit this concern in their advertising:

> The insurer's promise to the insured to "simplify his life," to put him "in good hands," to back him with "a piece of

---

1. In deciding the insurance company's preliminary objections in this case, the allegations in the policyholder's complaint and all reasonable inferences therefrom must be taken to be true. *See Danson v. Casey*, 484 Pa. 415, 399 A.2d 360 (1979). The complaint must be liberally construed. *See Interstate Traveller Services, Inc. v. Commonwealth, Department of Environmental Resources*, 486 Pa. 536, 406 A.2d 1020 (1979). The majority's conclusion that the complaint fails to make a claim of bad faith conduct reflects an illiberal reading of the complaint.

the rock" or to be "on his side" hardly suggests that the insurer will abandon the insured in his time of need. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 262 Pa.Super. 331, 342–43, 396 A.2d 780, 786 (1978) (Spaeth, J., opinion in support of reversal). Moreover, there is authority in Pennsylvania law for recovering mental distress damages in the similar area of landlord-tenant relations. *See Fair v. Negley*, 257 Pa.Super. 50, 390 A.2d 240 (1979); *Beasley v. Freedman*, 256 Pa.Super. 208, 389 A.2d 1087 (1978). Finally, Pennsylvania should join the numerous jurisdictions which have recently recognized tort actions based on an insurance company's bad faith conduct.[2]

The majority opinion suggests that this case is covered by the Unfair Insurance Practices Act [hereinafter U.I.P.A.], Act of July 22, 1974, P.L. 589, No. 205, § 1 *et seq.*, 40 P.S. § 1171.1 *et seq.* (Supp. 1981–82), and that the sanctions authorized by the U.I.P.A.—administrative penalty, injunction, and fines (40 P.S. §§ 1171.9, 1171.10, 1171.11)—are adequate to deter bad faith conduct. The majority concludes that it is unnecessary to recognize an independent tort action. In doing so, the majority (1) overlooks statutory construction principles, and (2) without any factual basis whatsoever, assumes that the U.I.P.A. is effective.

**2.** These jurisdictions include: *United Services Automobile Association v. Werley*, 526 P.2d 28 (Alaska 1974); *John Hancock Mutual Life Insurance Co. v. McNeill*, 27 Ariz.App. 502, 556 P.2d 803 (1976); *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973); *Grand Sheet Metal Products v. Protection Mutual Insurance Co.*, 34 Conn.Supp. 46, 375 A.2d 428 (Super.Ct. 1977); *Escambia Treating Co. v. Aetna Casualty & Surety Co.*, 421 F.Supp. 1367 (N.D. Fla. 1976); *Ledingham v. Blue Cross Plan*, 29 Ill.App.3d 339, 330 N.E.2d 540 (1975), *rev'd on other grounds*, 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976); *Amsden v. Grinell Mutual Reinsurance Co.*, 203 N.W.2d 252 (Iowa 1972); *Standard Life Insurance Co. of Indiana v. Veal*, 354 So.2d 239 (Miss. 1978); *United States Fidelity & Guarantee Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975); *State Farm General Insurance Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974); *Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Insurance Co.*, 279 N.W.2d 638 (N.D. 1979); *Kirk v. Safero Insurance Co.*, 28 Ohio Misc. 44, 273 N.E.2d 919 (1970); *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl. 1977); *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675 271 N.W.2d 368 (1978).

First, the words of the U.I.P.A. clearly demonstrate that the legislature never intended to limit any other remedies available against the insurance company:

§ 1171.13. Provisions of act additional to existing law

The powers vested in the Commissioner by this act are additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices declared to be unfair and deceptive.

Act of July 22, 1974, P.L. 589, No. 205, § 13, 40 P.S. § 1171.13 (Supp. 1981–82). We can reasonably infer that the legislature did not intend to preclude individual recovery in tort. *See Dozer Agency, Inc. v. Rosenberg*, 403 Pa. 237, 169 A.2d 771 (1961) (Unfair Insurance Practices Act of 1947, predecessor of the U.I.P.A., did not preclude individual causes of action). Furthermore, the Statutory Construction Act of 1972 provides:

§ 1929. Penalties no bar to civil remedies

The provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such statute.

1 Pa.C.S.A. § 1929 (Purdon). The U.I.P.A. sanctions cannot preclude the policyholder's recovery in tort. *See Pearl Assurance Co. v. National Insurance Agency*, 150 Pa.Super. 265, 28 A.2d 334 (1942), *aff'd on rehearing*, 151 Pa.Super. 146, 30 A.2d 333 (1943).

Second, the majority's conclusion "that the Unfair Insurance Practices Act serves adequately to deter bad faith conduct..." [p. 970], is unsupported. There is no evidence that the U.I.P.A. has been applied in this case. Moreover, any sanctions imposed by the U.I.P.A. would do absolutely nothing to compensate the policyholder. Finally, the fines are inadequate to deter bad faith conduct: while the policyholder in this case alleges damages in excess of $10,000, the U.I.P.A. only imposes a $5,000 penalty for each violation (40

P.S. § 1171.11(1))—a bargain from the company's point of view.

Consequently, I would reverse the order of the Superior Court and reinstate the policyholder's tort claim.

KAUFFMAN, J., joins in this dissenting opinion.

NIX, Justice, concurring.

I join the majority opinion but merely wish to briefly respond to the objection raised by the dissent. In addition to the deterrent provisions of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, 40 P.S. §§ 1171.9 and 1171.11 (Supp. 1980), appellant was also in a position to seek relief under a theory of breach of contract, or by pursuing the common law tort of deceit. *Korona v. Bensalem Tp.*, 385 Pa. 283, 122 A.2d 688 (1956). *Cf. Setlock et ux. v. Sutila*, 444 Pa. 552, 282 A.2d 380 (1971); *Nadolny v. Scoratow*, 412 Pa. 488, 195 A.2d 87 (1963). I do not accept the dissent's implicit premise that these existent remedies are inadequate to make appellant whole.

If we are to blindly accept the emotional plea of the dissent, we would be inviting the argument that emotional distress should be compensated in all instances of contractual breach. A long and unbroken chain of precedent has rejected that view.