## Dietz v. Round Hill Foods Inc.

*Penny Blackwell,* for plaintiff.
*Ralph D. Oyler,* for defendant.

KUHN, *J.,* December 18, 1987—Defendant has filed preliminary objections in the nature of a demurrer and for a more specific pleading in response to plaintiff's complaint, alleging that she was wrongfully discharged because of a pending workers' compensation claim.

For purposes of the demurrer, the following facts are elicited from the complaint. Plaintiff began her employment with defendant August 1, 1985. Her duties included lifting trays loaded with frozen turkey giblets and weighing up to 50 pounds. Plaintiff developed acute tendonitis and was medically restricted to light lifting. However, defendant assigned her to tasks involving heavy lifting resulting in develoment of bilateral carpal tunnel. After two operations plaintiff was off work on workers' compensation for one year. Defendant then offered plaintiff a quality inspector position which would meet her medical restrictions. After five days of training, plaintiff contracted bronchitis and was

sent home by the company physician. Before leaving work, defendant's personnel director informed her that she would be fired for leaving due to illness.

First, we must decide whether Pennsylvania recognizes a cause of action for retaliatory discharge of an at-will employee who files a workers' compensation claim. The analysis must initially ascertain whether any public policy is threatened by the discharge. *Cisco v. United Parcel Services Inc.*, 328 Pa. Super. 300, 306, 476 A.2d 1340, 1343 (1984). Our appellate courts have not been faced with this exact issue. Plaintiff would have us follow the reasoning set forth in *Rettinger v. American Can Company*, 574 F. Supp. 306 (M.D. Pa. 1983), while defendant would argue that this court, per opinion of President Judge Oscar F. Spicer in *Berube v. Ski Roundtop Inc.*, 25 Adams Leg. J. 163 (1983), has already decided the issue against plaintiff.

We agree that *Berube* appears dispositive, but we also believe that a thorough[1] discussion of the development of this subject is appropriate at this time in order to appreciate what we believe to be the current state of Pennsylvania law. Our discussion will concentrate generally on claims of wrongful or retaliatory discharge of employees for filing workers' compensation claims, and specifically on the Pennsylvania approach to wrongful discharge. We suggest, at this point, that the public policy exception to at-will employment applies only when a clear constitutional or statutory mandate exists and that the case sub judice does not fit that criteria.

At least since *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289, 21 Atl. 157 (1891), Penn-

---

1. We do not suggest that our research is exhaustive, however, it does fairly represent the major decisions on both sides of the issue.

sylvania has followed the general principle of employment law that an employer could discharge an employee, at its pleasure, without cause, unless restrained by an employment contract or statute. This principle, known as the at-will doctrine, prevailed in most other states as well.

Erosion of the at-will doctrine began in 1959 when the California courts opened the door to an action for wrongful discharge in *Petermann v. International Brotherhood of Teamsters,* 174 Cal. App. 2d 184 (1959). There, on public policy grounds, the court recognized a non-statutory cause of action arising from an employee's dismissal for refusing to commit perjury.

The first case involving a discharge for an employee allegedly pursuing workers' compensation benefits was decided in *Frampton v. Central Indiana Gas Company,* 297 N.E.2d 425 (Indiana, 1973). There the Indiana Supreme Court announced that a cause of action was stated for such a discharge. Interestingly, as expansive as this discussion may have appeared at the time, its reasoning was very narrow. The Indiana Workmen's Compensation Act expressly prohibited the use of any "device" to relieve an employer of its obligation under the act. The court ruled that threat of discharge is such a device and is "in clear contravention of public policy." 297 N.E.2d at 248. Furthermore, retaliatory discharge was held to be analogous to retaliatory eviction of a tenant.

The following year the Pennsylvania Supreme Court, in dicta, first suggested that our courts might recognize exceptions to the employment-at-will doctrine when the discharge is motivated by a specific intent to harm the employee or violates a clear mandate of public policy. *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174

(1974). The basis for the public policy exception arises from the observation that:

"[t]here are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. . . ." 456 Pa. at 184, 319 A.2d at 180.

As will be seen later, footnote 16 in that opinion is relevant to our present discussion. Therein the Supreme Court cited *Frampton, supra,* as a case where "[t]he mandates of public policy were clear and compelling . . ." 456 Pa. at 183-4, 319 A.2d at 180. Significantly, however, the court did not explain whether its reference to *Frampton* was because the Indiana statute prohibits "devices", or whether *any* threat to discharge an employee seeking workers' compensation benefits violates public policy. This distinction is important because the Pennsylvania Workmen's Compensation Act[2] contains no similar statutory prohibition.[3]

---

2. Feb. 28, 1956, P.L. (1955) 1120; 77 P.S. §1, et seq., as amended.

3. Interestingly, the import of *Frampton* has been recently discussed by the Indiana courts in *Rice v. Grant County Board of Commissioners,* 472 N.E.2d 213 (Ind. App.2d Dist. 1984). That court noted that "although the court in *Frampton* spoke in terms of public policy, it did so in the sense of enforcing a specific statutory prohibition against the use of any 'device' to relieve an employer of its obligation under the Workmen's Compensation Act. An attempt to declare any discharge unlawful where the reason for the discharge is contrary to general public policy was specifically rejected [by other cases]. Such a broad exception was left for legislative expression of what constitutes public policy or which of competing public policies should be given precedence." 472 N.E. 2d at 215.

Unfortunately, our Supreme Court has not spoken further on wrongful discharge since *Geary*.

Next, in a decision which did not cite *Frampton, supra,* the Michigan courts in *Sventko v. Kroger Comp.,* 245 N.W.2d 151 (Mich. App. 1976), ruled that an employee who alleged that her employment had been terminated in retaliation for her filing a workers' compensation claim stated a cause of action on public policy grounds. There, although the Michigan workers' compensation statute did not directly prohibit retaliatory discharge, the court noted that the legislature did make it a crime for an employer to avoid the act's provisions by consistently discharging employees before they qualify under the act.

The first Pennsylvania case interpreting *Geary* involved the discharge of an employee in retaliation for having taken off work to serve on jury duty. *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978). From the dicta in *Geary* the Superior Court ruled that Pennsylvania recognizes a cause of action under the facts of that case. The court noted that trial by jury is guaranteed by Article I, section 6 of the Pennsylvania Constitution and refusal of a prospective juror to appear when summoned subjects one to fine.[4]

*Reuther* cited *Frampton, supra,* as an example of a recognized facet of public policy which an employer had no right to intrude upon, but, like *Geary,*

---

4. See 42 Pa. C.S. §4501 (Declaration of Policy) stating the policy of this commonwealth regarding the right to a jury trial, and 42 Pa. C.S. §4563 (Protection of Employment of Jurors) imposing both criminal and civil liability upon an employer who deprives an employee of his employment for responding to a jury summons. These sections are derived from former 17 P.S. §1301.1 and 17 P.S. §1301.18(a), adopted in 1972 and 1975, respectively. The *Reuther* court, however, only referred to former 17 P.S. §1099 and §1336 in its opinion.

*supra,* did not indicate whether it was being cited for the narrow ruling described above or on more general principles.

Less than one month later the North Carolina courts addressed the workers' compensation issue in *Dockery v. Lampart Table Co.,* 244 S.E.2d 272 (N.C. App. 1978). Despite language in the North Carolina Workmen's Compensation Act also proscribing the use of "devices" to relieve an employer of its obligations under the act, the court rejected the reasoning of *Frampton, supra,* on two basis; first, North Carolina had not adopted the landlord-tenant retaliatory eviction concept upon which the Indiana court drew its analogy and, second, the court reasoned that if the legislature had intended to create a cause of action, it would have specifically addressed the problem. Therefore, believing that the legislature was better equipped to promote the public welfare by weighing the various social and economic factors the court refused to engage in judicial legislation.[5]

In June 1978, the Alabama Supreme Court refused to adopt a public policy exception to the employment-at-will doctrine for an employee who is fired in retaliation for seeking workers' compensation benefits. *Martin v. Tapley,* 360 So.2d 708 (Ala. 1978). This rule stood for several years, *Johnson v. Gary,* 443 So.2d 924 (Ala. 1983), until February 1, 1985, when the Alabama Legislature amended the state's workers' compensation act to specifically proscribe the termination of an employee solely because he/she sought compensation benefits. *Cara-*

5. The next session of the North Carolina Legislature, in response to *Dockery, supra,* expressly created a private cause of action for an employee's dismissal in retaliation for claiming workers' compensation benefits. See *Buie v. Daniel International Corp.,* 289 S.E.2d 118 (N.C. App. 1982).

*way v. Franklin Ferguson Manufacturing Co.*, 507 So.2d 925 (Ala. 1987).

The Florida courts refused to follow *Frampton, supra,* and *Sventko, supra,* in *Segal v. Arrow Industries Corp.*, 364 So.2d 89 (Fla. App. 1978). The following year the Florida legislature also created a statutory cause of action for a wrongful discharge in retaliation for pursuing a workers' compensation claim. See *Smith v. Piezo Technology and Professional Administrators*, 427 So.2d 182 (Fla. 1983).

In *Kelsay v. Motorola Inc.*, 384 N.E.2d 353 (Ill. 1978) the Illinois Supreme Court specifically rejected a restrictive interpretation of *Frampton, supra,* and found a cause of action in the absence of similar statutory prohibitions in the Illinois Act against use of a "device." The court determined that the state's workers' compensation act was enacted in furtherance of sound public policy and in order to uphold and implement that policy, a cause of action against retaliatory discharge was required.[6]

Before the end of 1978, yet another court held that a cause of action existed for retaliatory discharge. In *Brown v. Transcon Lines*, 284 Or. 597, 588 P.2d 1087 (1978) the Oregon Supreme Court adopted its reasoning from an earlier opinion, *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975), which held that an employer must respond in damages when he discharges an employee for a "socially undesirable motive." The court was of the opinion that discharging an employee for seeking compensation benefits is a "socially undesirable motive." However, the court noted that two years before plaintiff's discharge, the Oregon legislature had

6. The dissent strongly criticized the majority's willingness to involve itself in judicial legislation, no matter how emotionally appealing the situation, when the legislature omitted such a provision in the worker's compensation act.

amended its workers' compensation statute to declare it to be an "unlawful employment practice" for an employer to discharge an employee for filing a workers' compensation claim. The court referred to this enactment,

"[a]s a recognition by the Oregon legislature of a public policy which provides a proper basis for application of the rule as stated in *Nees* to the discharge of an employee for making a claim for workers' compensation." 588 P.2d at 1090.

The Third Circuit had its first chance to analyze *Geary, supra,* and *Reuther, supra,* in *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (1979). There plaintiff was discharged for refusing his employer's request to submit to a polygraph examination during a company investigation. The court felt that section 7321(a) of the Crimes Code, 18 Pa.C.S. §7321(a), making it a misdemeanor for an employer to require that a polygraph test be taken as a condition of employment, indicated the type of "recognized facet of public policy" required by *Geary* and *Reuther.*[7]

West Virginia's first opportunity to discuss the issue before us occurred in *Shanholtz v. Monongahela Power Co.,* 270 S.E.2d 178 (W. Vir. 1980). However, the facts prevented a complete analysis of that court's thinking because the statute of limitations had run on the tort claim for wrongful discharge. Nevertheless, in dicta, the court stated that a section of the workers' compensation act prohibiting employers from discriminating against employees who attempted to receive benefits indicated that

7. Reliance by the court upon the statutory prohibition as a declaration of public policy would support our contention that *Geary's* recognition of *Frampton,* as a case where the mandate of public policy was clear and compelling, referred to the narrow holding therein regarding use of a "device."

such action was in contravention of public policy, and thereby conferred a substantive right upon employees discriminated against in this manner.

A three-judge panel of the Superior Court had the next opportunity to identify a clear mandate public policy in *Hunter v. Port Authority of Allegheny County,* 277 Pa. Super. 4, 419 A.2d 631 (1980), where a governmental agency refused to hire an employee who had been convicted of assault but was later pardoned. The court looked to legislation, judicial precedent, and the Pennsylvania Constitution in determining that plaintiff stated a cause of action, when the past criminal behavior was not reasonably related to his fitness to perform the job sought. In 1979 the Legislature had adopted the Criminal History Record Information Act[8] which limited the employer's use of criminal records when making employment decisions.[9] Furthermore, the Supreme Court had earlier discussed "the deeply ingrained public policy of the state to avoid unwarranted stigmatization of and unreasonable restrictions on former offenders." *Secretary of Revenue v. John's Vending Corp.,* 453 Pa. 488, 494, 309 A.2d 358, 362 (1973). Finally, the court noted that Article I, section 1 of the Pennsylvania Constitution has been interpreted as guaranteeing an individual's right to engage in a common occupation. The court found the substantial public policy favoring the rehabilitation of former offenders and their reintegration into society as compelling as the public policy involved in *Reuther.*

---

8. Act of July 16, 1979, P.L. 116, 18 Pa. C.S. §9101 et seq.

9. 18 Pa. C.S. §9125 provides that convictions for felonies and misdemeanors and arrests for offenses relating to an applicant's suitability for employment may be considered by the employer, otherwise, they may not be considered. Section 9183 provides for injunctive relief and/or civil damages.

Another three-judge panel, in *Yaindl v. Ingersoll-Rand Co.*, 281 Pa. Super. 560, 422 A.2d 611 (1981), found no public policy to be threatened in the discharge of an apparently disruptive employee, even if some personal motives were involved in the discharge. Although the court suggested a more expansive approach in considering an action for wrongful discharge, it is noteworthy that this case involved no statutory prohibitions which were violated.

Following the rationale of *Dockery, supra, Martin, supra,* and *Segal, supra,* the Mississippi Supreme Court in *Kelly v. Mississippi Valley Gas Comp.*, 397 So.2d 874 (1981), refused to adopt a public policy exception to an employer's right to discharge an employee at will when the termination is exercised in retaliation for the employee asserting his rights under the workers' compensation act. The court rejected the *Brown, supra, Kelsay, supra, Sventko, supra,* and *Frampton, supra,* reasoning because the statutes in those cases, unlike Mississippi's, contained sanctions against such discharges. This court felt that regardless of the merits of a cause of action under these circumstances, the solution is clearly for the legislature to decide and not the courts. This sentiment was best expressed in the following passage:

"In modern times the trend to turn to the judicial department for a solution to all of the real or imagined ills of our society has increased sometime to the point of requesting the courts to usurp the legislative power of the legislative department. This, we must resist by the exercise of judicial self-restraint and limit our role to the judicial power granted the judicial department under our constitution." 397 So.2d at 877.

With this background, the first Pennsylvania case involving the workers' compensation issue was decided in *Butler v. Negley House Inc.*, 129 P.L.J. 350, 20 D.&C.3d 543 (1981). After citing *Geary* and *Reuther, supra,* the court determined that our Workmen's Compensation Act establishes a public policy to protect employees from efforts by employers, using their superior bargaining position, to prevent injured employees from receiving benefits. Although recognizing a split of authority on the issue, the court concluded that courts had the right to create the cause of action, otherwise the legislative scheme would be seriously undermined if employers threatened to discharge employees seeking compensation benefits. [10]

The New Jersey Supreme Court was the next court to tackle this issue in *Lally v. Copygraphics,* 85 N.J. 668, 428 A.2d 1317 (1981). New Jersey's statute specifically provides that it is unlawful for an employer to discharge or discriminate against an employee for seeking workers' compensation benefits and further provides for relief and penalty. After stating that the state's public policy is reflected in these provisions, the court concluded that there also

---

10. We note that the *Butler* court did not discuss the specific language of the Oregon and Indiana statute when citing *Brown, supra,* and *Frampton, supra,* for support. In all fairness, however, the court did state that the failure to include a *remedy* for retaliatory discharge in the statute did not show a lack of intent on the part of the legislature to create a remedy. However, we believe that it is not the expression of a remedy which is important but, rather an expression that the discharge of an employee is to be prohibited, which manifests the public policy for which the exception is to be applied. Neither the Indiana nor Oregon statutes provided remedies. Yet the restrictions placed upon employers by the legislatures in those states was critical. For the reasons set forth later in this opinion, we must respectfully disagree with this conclusion.

exists a civil cause of action for such retaliatory discharge which was not superseded by the statutory language.[11] Again, we note that the Pennsylvania statute lacks similar provisions.

Kansas courts ruled that a civil cause of action for retaliatory discharge exists in *Murphy v. City of Topeka-Shawnee County,* 6 Kan. App.2d 488, 630 P.2d 186 (1981). It appears from the opinion that the Kansas workers' compensation act did not specifically prohibit such discharges. The court cited *Frampton, supra,* and *Kelsay, supra,* as supporting its position. No reference was made to the cases rejecting the cause of action or to the narrow holding of *Frampton.*

---

11. We do not believe our appellate courts would reach the same conclusion where statutory remedies are available. As noted in *Henry, supra,* the at-will employment doctrine was not applicable when termination was restrained by statute or contract. The Pennsylvania federal court has spoken twice on the issue of the exclusiveness of statutory remedies in *Bonham v. Dresser Industries Inc.,* 569 F.2d 187 (3d Cir. 1978) cert. denied, 439 U.S. 821 (1978), and *Bruffett v. Warner Communications Inc.,* 692 F.2d 910 (3d Cir. 1982) cert. Both cases concluded that the statutory remedies set forth in the Pennsylvania Human Relations Act, 43 P.S. §951, et seq., were exclusive and did not sanction a common law tort action for wrongful discharge under Pennsylvania law. As part of its reasoning the *Bruffett* court noted that Pennsylvania cases, i.e., *Reuther, Hunter, Perks,* applying the public policy exception did not have statutory remedies available to vindicate the important public policy implicated.

We further consider the holding in *Phillips v. Babcock & Wilcox,* 349 Pa. Super. 351, 503 A.2d 36 (1986), which held that a union employee could not maintain an action for wrongful discharge, in retaliation for pursuing workers' compensation benefits, when the collective bargaining contract protected him from discharge without just cause. The court stated that the contractual remedies provided the exclusive relief available to the employee.

In *Bottijliso v. Hutchinson Fruit Comp.*, 96 N.M. 789, 635 P.2d 992 (1981), the Court of Appeals of New Mexico felt the wisdom of adopting a cause of action for one discharged for seeking workers' compensation benefits was best left to the legislature. [12] The court took this approach after recognizing that the New Mexico Legislature had enacted comprehensive statutory provisions in its Human Rights Act declaring certain types discriminatory employment practices to be unlawful. It was felt that the legislature thereby evidenced a desire to restrict employee termination only in the areas specifically covered by the act. The Pennsylvania legislature likewise enacted a Human Rights Act in 1955, 43 P.S. §951, et seq., as amended, prohibiting certain discriminatory employment practices but not covering the type of discharge involved here.

Chronologically, at this point, *Berube, supra,* came before President Judge Spicer for disposition. Berube was a ski patroller who was discharged after filing a workers' compensation claim. Plaintiff argued that *Frampton, supra,* compelled a favorable result. Our court, however, determined that *Geary, supra,* must be read in light of *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Comp.*, 494 Pa. 501, 431 A.2d 966 (1981), which refused to judicially create a cause of action when an insurance company does not adjust a claim in good faith. Noting that policy arguments advanced in

---

12. The New Mexico Court of Appeals appears to have reversed its philosophy in *Virgil Varzola,* 102 N.M. 682, 699 P.2d 613 (1983). There the court held that an employee discharged in contravention of a clear mandate of public policy may state a cause of action. The issue before the court did not deal with compensation benefits so it is unclear how that issue may be handled in the future.

*D'Ambrosio* were similar to those discussed in *Frampton* the court suggested that legislative sanction was a better approach to the issue. Although finding a public policy in favor of an employee's right to apply for workers' compensation benefits the court did not find this policy to be as strong as that relating to jury service discussed in *Reuther, supra,* and thus did not elevate it to a status protected by a wrongful discharge cause of action.

Shortly thereafter, an opinion, contrary to *Berube,* was announced by the federal court in *Rettinger v. American Can Co.,* 574 F. Supp. 306 (M.D. Pa. 1983), wherein heavy reliance was placed upon *Butler, supra.*[13] The opinion adopted the *Butler* reasoning and was influenced by the reference to *Frampton, supra,* in footnote 16 in *Geary, supra.* Finding no statutory remedy for retaliatory discharge following the filing of a workers' compensation claim, the court concluded that Pennsylvania courts would recognize a common law cause of action for such a discharge. Again, the court appears to have adopted, without extensive comment, an expansive interpretation of *Frampton* rather than a narrow one based upon the provisions of the Indiana statute.

Kentucky was the next state to deal with the issue before us, and in *Firestone Textile Comp. v. Meadows,* 666 S.W.2d 730 (Ky. 1983), determined that the state's public policy, which provided that an employee has a right to freely seek lawful compensation benefits without fear of retaliatory discharge, is

---

13. The *Rettinger* opinion is dated September 9, 1983. *Berube* did not appear in our legal journal by that date. We surmise that *Berube* was not available to Judge Rambo. We decline to speculate whether *Berube* would have influenced the outcome of that case.

sufficient to warrant à cause of action for such discharge.[14]

Nevada considered the issue in *Hansen v. Harrah's*, 675 P.2d 394 (Nev. 1984), and felt that the only effective way to support the public policy concerning economic security for injured workers was to recognize a cause of action. *Hansen* supported its conclusion by relying upon *Frampton, supra, Sventko, supra, Kelsay, supra, Brown, supra, Lally, supra, Murphy, supra,* and *Parnar v. Americana Hotels Inc.*, 652 P.2d 625 (Haw. 1982).[15] Again, no mention was made of the specific statutory expression proscribing certain conduct which was significant in several of these cases.

During May, 1984, our Superior Court had another opportunity to examine the public policy exception in *Cisco v. United Parcel Services Inc.*, 328 Pa. Super. 300, 476 A.2d 1340 (1984). There an employee was forced to resign after theft and trespass

---

14. We must respectfully question the basis for the court's reasoning based on the following quote from *Firestone:*

"Should courts judicially recognize a cause of action for wrongful discharge where an employee at-will has been discharged solely because he filed a workers' compensation claim? Indiana so held in *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973). *Although there was no statute expressly prohibiting discharge of an employer (sic) because he filed a compensation claim,* the Indiana Supreme Court held: ... " 666 S.W.2d at 733. (emphasis supplied) As we noted earlier in our opinion, the precise ruling in *Frampton* was based upon a statutory prohibition against "devices" which interfere with the exercise of one's right to benefits. The *Firestone* court completely ignored that discussion of the Indiana statute.

15. *Parnar* involved an allegation of discharge in retaliation for offering truthful testimony about an employer's possible antitrust violations and did not involve workers' compensation. See *McNulty v. Borden Inc.*, 474 F. Supp. 1111 (E.D. Pa. 1979).

charges were filed against him subsequent to a routine delivery of parcels to the victim's residence. After a jury acquitted him of the charges and attempts to be reinstated were unsuccessful, the employee filed a wrongful discharge action. Plaintiff contended that an accused's presumption of innocence and the Criminal History Record Information Act, 18 Pa.C.S. §9125, expressed a mandate of public policy against his discharge.

Realizing that a definition of "public policy" is hindered by its varying manifestations, the *Cisco* court noted that:

"The sources of public policy [which may limit the employer's right of discharge] include legislation; administrative rules, regulation, or decision; and judicial decision. In certain instances, a professional code of ethics may contain an expression of public policy. . . . Absent legislation, the judiciary must define the cause of action in case-by-case determinations. *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980)." 328 Pa. Super. at 306-7, 476 A.2d at 1340.

Assuming that the Criminal History Record Information Act is an expression of public policy, the court did not feel this case violated public policy because the employer, in order to protect its reputation, had a plausible and legitimate reason for discharging an employee accused of theft and trespass in connection with his employment. See *Gillespie v. St. Joseph's Universities*, 355 Pa. Super. 362, 513 A.2d 471 (1986) for the same result.

The Supreme Court of Tennessee expressly followed *Frampton, supra,* in announcing the existence of a casue of action for retaliatory discharge, after an employee seeks workers' compensation benefits, in *Clanton v. Cain-Sloan Comp.*, 677 S.W.2d 441 (1984). The court stated that:

"*Frampton* is especially significant for Tennessee in that the Indiana statute prohibiting devices is all but identical to T.C.A., §50-6-114." 677 S.W.2d at 443.[16]

Quite aside from the ruling in *Clanton* we are struck once again by the "bootstrap" approach used by the courts to justify the creation of the cause of action. More specifically, the court stated,

"Numerous courts since *Frampton* have reached similar results under statutes which do not explicitly create a cause of action for retaliatory discharge." 677 S.W.2d at 444. *Brown, supra, Lally, supra,* and *Smith, supra,* were cited as examples. What we find curious is the court's failure to· mention the statutory provisions in each of these cases which we have discussed above.

Another Pennsylvania based federal court concluded that a cause of action exists for a claim of wrongful discharge in retaliation for filing workers' compensation claims in *Michelson v. Exxon Research and Engineering Co.,* 629 F. Supp. 418 (W.D. Pa. 1986). The court was guided by *Butler, supra,* and *Rettinger, supra,* in reaching this conclusion.[17] Under the facts, however, plaintiff was not able to establish a retaliatory motive for the dis-

---

16. We acknowledge that *Clanton* recognized that the absence of such statutory language in several other states did not preclude the court from creating a cause of action, i.e. *Kelsay, supra,* however, the specific ruling of *Clanton* was that retaliatory discharge is a "device" under the Tennessee statute. "In this regard, we agree with *Frampton* that retaliatory discharge constitutes a device under section 50-6-114." 667 S.W.2d at 445.

17. Relying solely upon *Butler* the court in *Alexander v. Red Star Express Lines of Auburn Inc.,* 646 F. Supp. 672 (E.D. Pa. 1986) and *Aquino v. Sommer Maid Creamery Inc.,* 657 F. Supp. 208 (E.D. Pa. 1987) reached the same conclusion.

charge. On appeal [18] the court of appeals would not conclude that Pennsylvania recognizes a cause of action for such discharge, but rather determined that even if Pennsylvania embraced the cause of action, the evidence was insufficient to satisfy plaintiff's burden.

Finally, we note that several other states have enacted statutory provisions proscribing discrimination against or the discharge of employees for seeking workers' compensation benefits. See *Mitchell v. St. Louis County,* 575 S.W.2d 813 (Mo. App. 1978); *Bryant v. Dayton Casket Comp.,* 69 Ohio St. 2d 367, 433 N.E.2d 142 (1982); *Webb v. Dayton Tire and Rubber Comp.,* 697 P.2d 519 (Okl. 1985); *Ducote v. J.A. Jones Construction Comp.,* 471 So.2d 704 (La. 1985); *Van Tran Electric Corp. v. Thomas,* 708 S.W.2d 527 (Tex. App. — Waco 1986).

Recently our Superior Court pointed out that those Pennsylvania cases recognizing a cause of action for wrongful discharge on public policy grounds represent narrow exceptions to the general at-will employment rule and do not represent novel theories of public policy. *Darlington v. General Electric,* 350 Pa. Super. 183, 504 A.2d 306 (1986).

As discussed above, there is no consensus of opinion on the issue sub judice. Many of the cases recognizing a cause of action found a clear manifestation of public policy in the statutory language proscribing discrimination or discharge for seeking benefits. Other courts adopted these decisions, even though their state statutory scheme did not expressly prohibit retaliation, without discussing the sig-

---

18. 808 F.2d 1005 (3d Cir. 1987).

nificance of the express language of the statute in the earlier cases. Even *Geary's* reference to *Frampton* has served to confuse the issue unless one concludes, as we do, that the *Geary* court meant to only embrace the more narrow view of *Frampton*. Then *Reuther* and *Hunter* logically follow because of the statutory language utilized to develop the public policy exception in those cases.

Those courts rejecting the judicial creation of the cause of action where the state's workers' compensation act does not expressly prohibit retaliation have looked to the legislature to offer the solution. Some commentators have made the same suggestion. See K.H. Decker, *At-Will Employment In Pennsylvania — A Proposal For Its Abolition and Statutory Regulation*, 87 Dickinson L. Rev. 477 (1983) cited by *Darlington*.

The exercising of judicial restraint in this area is appropriate because of an important counterbalancing public policy that the employer be master of his business. The legislature is best equipped to balance the competing equities no matter how appealing the issue sub judice may appear.

A hint that this legislative approach is more advisable[19] was expressed in *Martin v. Capital Cities*

---

19. A further hint comes from *Poyser v. Newman & Co. Inc.*, 514 Pa. 32, 522 A.2d 548 (1987), where the court refused to accept plaintiff's theory that an employer's willful and wanton disregard for employee safety is the legal equivalent of an intentional tort and, when alleged, operated to remove the personal injury action from the exclusivity provision of section 303(a) of the Pennsylvania Workmen's Compensation Act, 48 P.S. §481(a). The appellate courts of some other states had held that such actions prevented the operation of the exclusive-remedy provision of the statute in their states, but those cases rested upon provisions in the statute which expressly preserved the employee's right to sue for an injury caused by

*Media Inc.*, 354 Pa. Super. 198, 511 A.2d 830 (1986), where the court stated,

"Taking a nationwide view of the law in this area, it is apparent that what once was the corpus juris of employment relations has lately become an amorphous mass of confusion replete with holdings that defy reconciliation from one jurisdiction to the next. The at-will presumption, the citadel that once governed the field with such predictability, has been eroded of late by piecemeal attacks on both contract and tort fronts and the entire field seems precariously perched on the brink of change.

"Pennsylvania has thus far escaped the widescale turbulence so common to the field and still clings to the at-will presumption. . . . we believe that if terminable at-will contracts are to be forbidden, the judicial process may be an inappropriate forum for such sweeping policy change." 354 Pa. Super. at 208, 511 A.2d at 834.

We therefore conclude that plaintiff has failed to state a cause of action. Because of this conclusion, we need not address defendant's request for a more specific pleading.

Accordingly, we enter the attached

## ORDER OF COURT

And now, December 18, 1987, defendant's preliminary objection in the nature of a demurrer is granted. It appearing that plaintiff will not be able to amend, the case is dismissed. Costs to be paid by plaintiff.

---

the employer's intentional tort. Although recognizing the appeal of plaintiff's argument, the court determined that the issue was one which had to be resolved by legislative, not judicial, action.