[S.F. No. 22433.   In Bank.   Apr. 21, 1967.]

ROSINA CRISCI, Plaintiff and Respondent, v. THE SE-
CURITY INSURANCE COMPANY OF NEW HAVEN,
CONNECTICUT, Defendant and Appellant.

Bishop, Murray & Barry and Cyril Viadro for Defendant and Appellant.

Edward L. Lascher as Amicus Curiae in support of Defendant and Appellant.

Lewis & Stein, Marvin E. Lewis and Pierce N. Stein for Plaintiff and Respondent.

Edward I. Pollock, Theodore A. Horn, Robert G. Beloud and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Respondent.

PETERS, J.—In an action against The Security Insurance Company of New Haven, Connecticut, the trial court awarded Rosina Crisci $91,000 (plus interest) because she suffered a judgment in a personal injury action after Security, her insurer, refused to settle the claim. Mrs. Crisci was also awarded $25,000 for mental suffering. Security has appealed.

June DiMare and her husband were tenants in an apartment building owned by Rosina Crisci. Mrs. DiMare was descending the apartment's outside wooden staircase when a tread gave way. She fell through the resulting opening up to her waist and was left hanging 15 feet above the ground. Mrs. DiMare suffered physical injuries and developed a very severe psychosis. In a suit brought against Mrs. Crisci the DiMares alleged that the step broke because Mrs. Crisci was negligent in inspecting and maintaining the stairs. They contended that Mrs. DiMare's mental condition was caused by the accident,

and they asked for $400,000 as compensation for physical and mental injuries and medical expenses.

Mrs. Crisci had $10,000 of insurance coverage under a general liability policy issued by Security. The policy obligated Security to defend the suit against Mrs. Crisci and authorized the company to make any settlement it deemed expedient.[1] Security hired an experienced lawyer, Mr. Healy, to handle the case. Both he and defendant's claims manager believed that unless evidence was discovered showing that Mrs. DiMare had a prior mental illness, a jury would probably find that the accident precipitated Mrs. DiMare's psychosis. And both men believed that if the jury felt that the fall triggered the psychosis, a verdict of not less than $100,000 would be returned.

An extensive search turned up no evidence that Mrs. DiMare had any prior mental abnormality. As a teenager Mrs. DiMare had been in a Washington mental hospital, but only to have an abortion. Both Mrs. DiMare and Mrs. Crisci found psychiatrists who would testify that the accident caused Mrs. DiMare's illness, and the insurance company knew of this testimony. Among those who felt the psychosis was not related to the accident were the doctors at the state mental hospital where Mrs. DiMare had been committed following the accident. All the psychiatrists agreed, however, that a psychosis could be triggered by a sudden fear of falling to one's death.

The exact chronology of settlement offers is not established by the record. However, by the time the DiMares' attorney reduced his settlement demands to $10,000, Security had doctors prepared to support its position and was only willing to pay $3,000 for Mrs. DiMare's physical injuries. Security was unwilling to pay one cent for the possibility of a plaintiff's verdict on the mental illness issue. This conclusion was based on the assumption that the jury would believe all of the defendant's psychiatric evidence and none of the plaintiff's. Security also rejected a $9,000 settlement demand at a time when Mrs. Crisci offered to pay $2,500 of the settlement.

A jury awarded Mrs. DiMare $100,000 and her husband $1,000. After an appeal (*DiMare* v. *Cresci*,[2] 58 Cal.2d 292 [23 Cal.Rptr. 772, 373 P.2d 860]) the insurance company paid

---

[1] Mrs. Crisci's own attorney, Mr. Pardini, was consulted by the counsel for the insurance company, but Mr. Pardini did not direct or control either settlement negotiations or the defense of Mrs. DiMare's suit.

[2] In the prior litigation plaintiff was sued as ''Rosina Cresci.''

$10,000 of this amount, the amount of its policy. The DiMares then sought to collect the balance from Mrs. Crisci. A settlement was arranged by which the DiMares received $22,000, a 40 percent interest in Mrs. Crisci's claim to a particular piece of property, and an assignment of Mrs. Crisci's cause of action against Security. Mrs. Crisci, an immigrant widow of 70, became indigent. She worked as a babysitter, and her grandchildren paid her rent. The change in her financial condition was accompanied by a decline in physical health, hysteria, and suicide attempts. Mrs. Crisci then brought this action.

The liability of an insurer in excess of its policy limits for failure to accept a settlement offer within those limits was considered by this court in *Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654 [328 P.2d 198]. It was there reasoned that in every contract, including policies of insurance, there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement; that it is common knowledge that one of the usual methods by which an insured receives protection under a liability insurance policy is by settlement of claims without litigation; that the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; that in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives to its own interests; and that when "there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim." (50 Cal.2d at p. 659.)

In determining whether an insurer has given consideration to the interests of the insured, the test is whether a prudent insurer without policy limits would have accepted the settlement offer. (*Kinder* v. *Western Pioneer Ins. Co.*, 231 Cal.App.2d 894, 900 [42 Cal.Rptr. 394]; *Critz* v. *Farmers Ins. Group*, 230 Cal.App.2d 788, 798 [41 Cal.Rptr. 401]; *Martin* v. *Hartford Acc. & Indem. Co.*, 228 Cal.App.2d 173, 183 [41 Cal.Rptr. 401]; *Davy* v. *Public National Ins. Co.*, 181 Cal.App.2d 387, 400 [5 Cal.Rptr. 488]; see *Hodges* v. *Standard Accident Ins. Co.*, 198 Cal.App.2d 564, 579 [18 Cal.Rptr. 17].)

Several cases, in considering the liability of the insurer, contain language to the effect that bad faith is the equivalent of dishonesty, fraud, and concealment. (See *Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d 788, 796; *Palmer* v. *Financial Indem. Co.,* 215 Cal.App.2d 419, 429 [30 Cal.Rptr. 204]; *Davy* v. *Public National Ins. Co., supra,* 181 Cal.App.2d 387, 396.) ▉ Obviously a showing that the insurer has been guilty of actual dishonesty, fraud, or concealment is relevant to the determination whether it has given consideration to the insured's interest in considering a settlement offer within the policy limits. The language used in the cases, however, should not be understood as meaning that in the absence of evidence establishing actual dishonesty, fraud, or concealment no recovery may be had for a judgment in excess of the policy limits. *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 658-659, makes it clear that liability based on an implied covenant exists whenever the insurer refuses to settle in an appropriate case and that liability may exist when the insurer unwarrantedly refuses an offered settlement where the most reasonable manner of disposing of the claim is by accepting the settlement. ▉ Liability is imposed not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing. Moreover, examination of the balance of the *Palmer, Critz,* and *Davy* opinions makes it abundantly clear that recovery may be based on unwarranted rejection of a reasonable settlement offer and that the absence of evidence, circumstantial or direct, showing actual dishonesty, fraud, or concealment is not fatal to the cause of action.

Amicus curiae argues that, whenever an insurer receives an offer to settle within the policy limits and rejects it, the insurer should be liable in every case for the amount of any final judgment whether or not within the policy limits. As we have seen, the duty of the insurer to consider the insured's interest in settlement offers within the policy limits arises from an implied covenant in the contract, and ordinarily contract duties are strictly enforced and not subject to a standard of reasonableness. Obviously, it will always be in the insured's interest to settle within the policy limits when there is any danger, however slight, of a judgment in excess of those limits. Accordingly the rejection of a settlement within the limits where there is any danger of a judgment in excess of the limits can be justified, if at all, only on the basis of

interests of the insurer, and, in light of the common knowledge that settlement is one of the usual methods by which an insured receives protection under a liability policy, it may not be unreasonable for an insured who purchases a policy with limits to believe that a sum of money equal to the limits is available and will be used so as to avoid liability on his part with regard to any covered accident. In view of such expectation an insurer should not be permitted to further its own interests by rejecting opportunities to settle within the policy limits unless it is also willing to absorb losses which may result from its failure to settle.

The proposed rule is a simple one to apply and avoids the burdens of a determination whether a settlement offer within the policy limits was reasonable. The proposed rule would also eliminate the danger than an insurer, faced with a settlement offer at or near the policy limits, will reject it and gamble with the insured's money to further its own interests. Moreover, it is not entirely clear that the proposed rule would place a burden on insurers substantially greater than that which is present under existing law. ▋▋ The size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim.

Finally, and most importantly, there is more than a small amount of elementary justice in a rule that would require that, in this situation where the insurer's and insured's interests necessarily conflict, the insurer, which may reap the benefits of its determination not to settle, should also suffer the detriments of its decision. On the basis of these and other considerations, a number of commentators have urged that the insurer should be liable for any resulting judgment where it refuses to settle within the policy limits. (Note (1966) 18 Stan.L.Rev. 475, 482-485; Note (1951) 60 Yale L.J. 1037, 1041-1042; Comment (1949) 48 Mich.L.Rev. 95, 102; Note (1945) 13 U.Chi.L.Rev. 105, 109.)

▋▋ We need not, however, here determine whether there might be some countervailing considerations precluding adoption of the proposed rule because, under *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, and the cases following it, the evidence is clearly sufficient to support the determination that Security breached its duty to consider the

interests of Mrs. Crisci in proposed settlements. Both Security's attorney and its claims manager agreed that if Mrs. DiMare won an award for her psychosis, that award would be at least $100,000. Security attempts to justify its rejection of a settlement by contending that it believed Mrs. DiMare had no chance of winning on the mental suffering issue. That belief in the circumstances present could be found to be unreasonable. Security was putting blind faith in the power of its psychiatrists to convince the jury when it knew that the accident could have caused the psychosis, that its agents had told it that without evidence of prior mental defects a jury was likely to believe the fall precipitated the psychosis, and that Mrs. DiMare had reputable psychiatrists on her side. Further, the company had been told by a psychiatrist that in a group of 24 psychiatrists, 12 could be found to support each side.

The trial court found that defendant "knew that there was a considerable risk of substantial recovery beyond said policy limits" and that "the defendant did not give as much consideration to the financial interests of its said insured as it gave to its own interests." That is all that was required. The award of $91,000 must therefore be affirmed.

We must next determine the propriety of the award to Mrs. Crisci of $25,000 for her mental suffering. In *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 663, it was held that an action of the type involved here sounds in both contract and tort and that "where a case sounds both in contract and tort the plaintiff will ordinarily have freedom of election between an action of tort and one of contract. (*Eads* v. *Marks,* 39 Cal.2d 807, 811 [249 P.2d 257].) An exception to this rule is made in suits for personal injury caused by negligence, where the tort character of the action is considered to prevail [citations], but no such exception is applied in cases, like the present one, which relate to financial damage [citations]."[3] Although this rule was applied in *Comunale* with regard to a statute of limitations, the rule is also applicable in

---

[3]*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, was mainly concerned with the contract aspect of the action. This may be due to the facts that the tort duty is ordinarily based on the insurer's assumption of the defense and of settlement negotiations (see Keeton, *Liability Insurance and Responsibility for Settlement* (1954) 67 Harv.L.Rev. 1136, 1138-1139; Note (1966), *supra,* 18 Stan.L.Rev. 475), and that in *Comunale* the insurer did not undertake defense or settlement but denied coverage. In any event *Comunale* expressly recognizes that "wrongful refusal to settle has generally been treated as a tort." (50 Cal.2d at p. 663.)

determining liability. (*Weaver* v. *Bank of America,* 59 Cal.2d 428, 432 [30 Cal.Rptr. 4, 380 P.2d 644] ; *Lucas* v. *Hamm,* 56 Cal.2d 583, 589, fn. 2 [15 Cal.Rptr. 821, 364 P.2d 685] ; *Acadia, California, Ltd.* v. *Herbert,* 54 Cal.2d 328, 336 [5 Cal. Rptr. 686, 353 P.2d 294].) Insofar as language in *Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d 788, 799, might be interpreted as providing that the action for wrongful refusal to settle sounds solely in contract, it is disapproved.

Fundamental in our jurisprudence is the principle that for every wrong there is a remedy and that an injured party should be compensated for all damage proximately caused by the wrongdoer. Although we recognize exceptions from these fundamental principles, no departure should be sanctioned unless there is a strong necessity therefor.

The general rule of damages in tort is that the injured party may recover for all detriment caused whether it could have been anticipated or not. (Civ. Code, § 3333; see *Hunt Bros. Co.* v. *San Lorenzo etc. Co.,* 150 Cal. 51, 56 [87 P. 1093, 7 L.R.A. N.S. 913].) In accordance with the general rule, it is settled in this state that mental suffering constitutes an aggravation of damages when it naturally ensues from the act complained of, and in this connection mental suffering includes nervousness, grief, anxiety, worry, shock, humiliation and indignity as well as physical pain. The commonest example of the award of damages for mental suffering in addition to other damages is probably where the plaintiff suffers personal injuries in addition to mental distress as a result of either negligent or intentional misconduct by the defendant. (*DiMare* v. *Cresci, supra,* 58 Cal.2d 292, 300-301; *Deevy* v. *Tassi,* 21 Cal.2d 109, 120 [130 P.2d 389] ; *Dryden* v. *Continental Banking Co.,* 11 Cal.2d 33, 39-40 [77 P.2d 833].) Such awards are not confined to cases where the mental suffering award was in addition to an award for personal injuries; damages for mental distress have also been awarded in cases where the tortious conduct was an interference with property rights without any personal injuries apart from the mental distress. (*Acadia, California, Ltd.* v. *Herbert, supra,* 54 Cal.2d 328, 337; *Kornoff* v. *Kingsburg Cotton Oil Co.,* 45 Cal.2d 265, 271 et seq. [288 P.2d 507] ; *Herzog* v. *Grosso,* 41 Cal.2d 219, 225 [259 P.2d 429] ; *Emden* v. *Vitz,* 88 Cal.App.2d 313, 316 et seq. [198 P.2d 696].)

We are satisfied that a plaintiff who as a result of a defendant's tortious conduct loses his property and suffers mental distress may recover not only for the pecuniary loss

but also for his mental distress. No substantial reason exists to distinguish the cases which have permitted recovery for mental distress in actions for invasion of property rights. The principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities. (Prosser, Torts (3d ed. 1964) § 11, p. 43.) Obviously, where, as here, the claim is actionable and has resulted in substantial damages apart from those due to mental distress, the danger of fictitious claims is reduced, and we are not here concerned with mere bad manners or trivialities but tortious conduct resulting in substantial invasions of clearly protected interests.[4]

Recovery of damages for mental suffering in the instant case does not mean that in every case of breach of contract the injured party may recover such damages. Here the breach also constitutes a tort. Moreover, plaintiff did not seek by the contract involved here to obtain a commercial advantage but to protect herself against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss, and recovery of damages for mental suffering has been permitted for breach of contracts which directly concern the comfort, happiness or personal esteem of one of the parties. (*Chelini* v. *Nieri*, 32 Cal.2d 480, 482 [196 P.2d 915].)

It is not claimed that plaintiff's mental distress was not caused by defendant's refusal to settle or that the damages awarded were excessive in the light of plaintiff's substantial suffering.

The judgment is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

---

[4]Nor are we here concerned with the problem whether invasion of the plaintiff's right to be free from emotional disturbance is actionable where there is no injury to person or property rights in addition to the inflicted mental distress. (Cf. *Amaya* v. *Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295 [29 Cal.Rptr. 33, 379 P.2d 513].)