530 P.2d 380

**PACIFIC INSURANCE COMPANY OF NEW YORK and the Continental Insurance Companies, Appellants,**

v.

**Jack Christian Victor DEL MONTE, Appellee.**

**No. 2 CA–CIV 1671.**

Court of Appeals of Arizona, Division 2.

Jan. 14, 1975.

Rehearing Denied Feb. 7, 1975.

Review Denied March 18, 1975.

**24**

Lesher, Kimble, Rucker & Lindamood, P.C. by William E. Kimble, Tucson, for appellants.

Wayne A. Cypert, Nogales, for appellee; John L. Augustine, Nogales, of counsel.

## OPINION

HOWARD, Chief Judge.

The issues in this case revolve around appellants' duties and obligations to appellee under a "Mexico coverage" endorsement to an automobile accident policy.

Appellee Del Monte is a resident of Nogales, Arizona and owns and operates a business known as "El Diamante" in Nogales, Sonora, Mexico.

In November of 1967, Del Monte contacted one Edward J. Bubala, an insurance agent doing business in Nogales, Arizona, and requested a policy of automobile insurance which would give him the same protection in Nogales, Sonora as he had in the United States.

A policy of automobile insurance was issued to Del Monte by the appellant Pacific Insurance of New York, one of the companies in the Continental Insurance Group. It contained the following endorsement relative to Mexico:

## MEXICO COVERAGE—LIMITED

It is agreed that such insurance as is afforded by the policy applies also while the automobile is being used for trips into the Republic of Mexico, to destinations lying not more than 100 miles from the boundary line of the United States, provided that any such trip shall be for a period not exceeding ten days, subject to the following provisions:

1. Any claim payable for loss or damage to the insured automobile occurring in Mexico shall be payable in the United States of America, and in the event of loss or damage which may make necessary the repair of the automobile or replacement of any part or parts thereof, while the automobile is in Mexico, the basis of adjustment of claim for such repair or replacement shall not exceed the cost thereof at the nearest point in the United States where the repair or replacement could have been made.

2. The insurance afforded hereunder shall be excess insurance over any other valid and collectible insurance available to the insured, whether as an insured under a policy applicable with respect to the automobile or otherwise, against loss or damage covered hereunder.

3. The provisions of this endorsement shall be void unless the insured's place of residence is within the United States of America and the automobile to which the policy applies is principally garaged and used within the United States of America.

WARNING

UNLESS YOU HAVE AUTOMOBILE INSURANCE WRITTEN BY A MEXICAN INSURANCE COMPANY, YOU MAY SPEND MANY HOURS OR DAYS IN JAIL, IF YOU HAVE AN ACCIDENT IN MEXICO. INSURANCE COVERAGE SHOULD BE SECURED FROM A COMPANY LICENSED UNDER THE LAWS OF MEXICO TO WRITE SUCH INSURANCE IN ORDER TO AVOID COMPLICATIONS AND SOME OTHER PENALTIES POSSIBLE UNDER THE LAWS OF MEXICO, INCLUDING THE POSSIBLE IMPOUNDMENT OF YOUR AUTOMOBILE."

The policy also contained the following provisions relative to liability:

PART I—LIABILITY

COVERAGE A—BODILY INJURY LIABILITY; COVERAGE B—PROPERTY DAMAGE LIABILITY

*To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages* because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and *the company shall defend any suit alleging such bodily injury or property damage and seeking damages* which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company *may make such investigation and settlement of any claim or suit as it deems expedient.*

\* \* \* \* \* \*

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of an automobile insured hereunder, not to exceed $100 per bail bond, but without any obligation to apply for or furnish any such bonds;

\* \* \*" (Emphasis added)

On August 24, 1971, while driving in Nogales, Sonora, Mexico, Del Monte struck a pedestrian, a Mr. Savedra. Del Monte rushed the victim to a hospital in Nogales, Sonora and purchased certain medical supplies for him. The hospital and doctor expenses amounted to approxi-

mately $130. Shortly thereafter, the Mexican police arrived, impounded his car, and he was taken to the police station where he was placed under arrest. At the jail Del Monte succeeded in contacting the Mexican District Attorney and convinced him that if he were released he would not run away and would appear at the time and place designated by the Mexican authorities.

Upon being released, Del Monte went back across the border to the American side and contacted his insurance agent Mr. Bubala. He informed Bubala that he had had an accident and injured someone. (At that time the victim was still alive.) Bubala contacted Continental Insurance Company which arranged for an adjuster from the General Adjustment Bureau to meet with Del Monte the following day in Bubala's office.

At this meeting Del Monte told Mr. Leffler, the adjuster, details of what had occurred including the fact that he had had to buy some medicine for the victim. Leffler asked Del Monte if he had anyone who could help him in Mexico. Del Monte told the adjuster that he had contacted an attorney, Mr. Bravo, and then asked if the company had someone available in Mexico to aid him. The adjuster replied that the company did not and suggested to Del Monte that the best thing to do would be to see what he and Mr. Bravo could do on the Mexican side and the company would see what it could do.

Del Monte crossed the border and contacted the Mexican attorney, Mr. Bravo, who told Del Monte that the wisest thing to do would be to settle the situation as soon as possible. Bravo asked for the sum of .$800 of which Del Monte paid $400 with the balance to be paid upon Bravo finishing his work. Mr. Bravo did not finish the work and after 72 hours elapsed after the accident, Del Monte contacted another Mexican attorney, a Mr. Maldonado.

■ Under the laws of Mexico when there is an automobile accident which caus-

es personal injuries, if a settlement is not made before the traffic judge within 72 hours, the case is transferred to a criminal court for criminal prosecution. Furthermore, under Mexican law, a civil suit for damages can be combined with the criminal prosecution. Since no settlement was made with the victim within the 72-hour period Mr. Del Monte's case was transferred for criminal prosecution. In the meantime, the victim died. The heirs of the deceased threatened to file a civil action in Mexico for damages but were dissuaded by Del Monte and members of his family.

Del Monte was acquitted of the charges in the trial court. However, in Mexico, when a person is found not guilty the case goes to the Supreme Court of the State for review. Maldonado advised Del Monte, when the case went for review to the Supreme Court of the State of Sonora in Hermosillo, that he had contacted an attorney in Hermosillo to represent Del Monte on the appeal. In addition to the sums already paid to Maldonado he was paid other sums by Del Monte to take care of the fee of the attorney on the appeal. When the attorney in Hermosillo failed to appear before the Supreme Court of the State of Sonora, the case was reversed.

Del Monte then hired another attorney by the name of Piña and paid him a sum of $200. On remand Del Monte was found guilty. At the time of trial Del Monte had taken an appeal from the finding of guilty.

After the first meeting with the adjuster, Del Monte did not contact Bubala and ask the insurance company to do anything. The insurance company was never informed that the heirs of the deceased were making a claim against Del Monte, and no demand was ever made of the insurance company by either the heirs or Del Monte to settle with the heirs.

The company, which was investigating the accident under a reservation of rights did not send anyone into Nogales, Sonora, to investigate the circumstances of the accident. After Bubala had informed the adjuster that Del Monte was acquitted in the first trial, the adjuster attempted to obtain a copy of the court records and the accident report in Nogales, Sonora but only received from the traffic department a summary of the accident report. General Insurance's investigation efforts were suspended by the insurance company when nothing further was heard from Del Monte. A new adjuster took over the case; he informed the insurance company that Del Monte paid funeral bills and also incurred expenses in his defense and requested that the company make payment to Del Monte for all his expenses. The company, on August 22, 1972, sent a memo to the adjuster requesting copies of bills and any cancelled checks. It also wanted to know, as to the defense expenses, what Mexican court Del Monte was defended in and whether the adjuster could obtain copies of the court records.

On September 12, 1972, the adjuster sent Del Monte a letter asking him for a list of his expenses and receipts. In October of 1972, the adjuster received a letter from Del Monte's attorney telling him they were compiling the list. It was not until January of 1973, that the insurance company received a hand-written list of expenses, which included such items as bribes. There were no receipts or cancelled checks to substantiate any of the expenses. In August of 1973, this lawsuit was filed. At trial of the instant lawsuit Del Monte for the first time presented cancelled checks and receipts for the expenses he was claiming.

In August of 1973 this lawsuit was filed naming as defendants General Adjustment Bureau, Edward J. Bubala Agency, Inc., and appellees and seeking general and punitive damages against all parties.

At the conclusion of the trial, the court directed a verdict in favor of General Adjustment Bureau. The jury returned verdicts in favor of the Edward J. Bubala Agency, Inc. and in favor of Del Monte

against appellants in the amount of $560 actual damages and $100,000 punitive damages.

After denial of motions for judgment n. o. v. or in the alternative for a new trial, this appeal was perfected.

Appellants first contend the court erred in allowing appellee to read to the jury interrogatories concerning appellants' wealth and in allowing the issue of punitive damages to be submitted to the jury. We agree. Appellee's theories of liability submitted to the jury were: (1) the insurance company should have known the laws of Mexico and provided coverage; (2) lack of good faith in not paying the insured and not acting in his interest; (3) lack of good faith in interpreting the insurance policy; and (4) failure to investigate. Appellee, in support of his position, cites such cases as Crisci v. Security Ins. Co., 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967) and State Farm Auto Ins. Co. v. Civil Service Emp. Ins. Co., 19 Ariz.App. 594, 509 P.2d 725 (1973). We find these cases to be absolutely inapposite to the fact situation in the case sub judice since in those cases a demand to settle was made. The evidence is undisputed that no settlement demand or offer was ever made to the insurance companies.

Appellee contends:

"When appellee was informed by Mr. Bubala that the Mexico endorsement would provide him with same coverage he had in the United States . . . they [appellants] were guilty of bad faith, deceit, misrepresentation, oppressive and reckless conduct, thus entitling appellee to punitive damages."

It was the further position of appellee at trial and on appeal that the insurance company had a duty to hire people in Mexico to aid him after the accident.

██ The rights, obligations and duties of the parties *inter se* were defined by the terms of the insurance contract between them. Appellee's contention that there was a misrepresentation of the Mexico endorsement is without foundation. If the accident had occurred in the United States there would have been no obligation under the policy for the insurer to provide attorneys or other persons to aid appellee in the defense of a criminal prosecution. The obligations of the insurance company in this case are clearly and unambiguously spelled out in the policy. Had a civil action for damages been filed in conjunction with the criminal prosecution there would have been an obligation to defend the civil action for damages. Had a demand to settle been made by the heirs of the deceased or someone asking for and on their behalf for a settlement then the insurer would have had to give consideration to that claim as set forth in State Farm Auto Insurance Company v. Civil Service Emp. Ins. Co., supra.

The insurance contract contains no obligation to settle any claims in Mexico within a 72-hour period. In fact, the Mexico endorsement makes it clear that the coverage is limited and the warning contained therein in bold print makes perfectly clear the consequences if one does not obtain coverage from a company licensed under the laws of Mexico to write automobile insurance. Mr. Bubala testified that although he does write insurance for companies authorized to write insurance in Mexico, such policies were only designed for and can be written only for tourists who occasionally go into Mexico and not for a person such as Del Monte who had a business in Mexico and traveled their daily.

There being no conduct on the part of the insurer or its agents which would constitute the basis for punitive damages, it was error to submit the issue to the jury.

██ Appellants also contend the evidence submitted at trial only entitled Del Monte to judgment in the amount of $351.-60 for medical expenses and bond premiums. We agree. All the other expenses, except the one for the funeral, related to the defense of the criminal action. Payment of the funeral expenses was without the written consent or knowledge of the insurance companies hence excluded under the terms of the policy.

The judgment of the lower court is reversed and the trial court is directed to enter judgment in favor of appellee and against appellants in the sum of $351.60.

KRUCKER, J., and ROBERT B. BUCHANAN, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having requested that he be relieved from consideration of this matter, Judge ROBERT B. BUCHANAN was called to sit in his stead and participate in the determination of this decision.