**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-2354NI

_____

Thomas K. Berglund; Sally Berglund,   *
                                           *

              Appellees,       *

                                           *

    v.                            *

                                         *

State Farm Mutual Automobile      *
Insurance Company,           *

                                         *

             Appellant.       *

_____      *

State of Iowa,                *

                                         *

             Intervenor.    *

                                  Appeals from the United States
                                  District Court for the Northern
_____                District of Iowa.

No. 96-2359NI

_____

Thomas K. Berglund; Sally Berglund,   *

                                           *

             Appellants,     *

                                         *

    v.                            *

                                         *

State Farm Mutual Automobile      *
Insurance Company,           *

                                       *

             Appellee.      *

_____      *

State of Iowa,

        Intervenor.

\*
\*
\*
\*

_____

Submitted:  May 22, 1997
Filed:  August 26, 1997

_____

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

_____

FAGG, Circuit Judge.

This diversity case arises from a motor vehicle accident at an intersection in rural Iowa.  Thomas K. Berglund ran a stop sign and struck a van.  The van's driver, Ronald Jalas, and his spouse, Pamela Jalas, suffered back and closed head injuries.  Their four-year-old daughter, Jazelle, was killed.  Two of the Jalases' other children had died before.  At the time of the accident, an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company insured Thomas and Sally Berglund for up to $500,000 per accident.  The Berglunds also had a $1 million excess liability insurance policy with Grinnell Mutual Reinsurance Company that applied only after other insurance was exhausted.  The Jalases eventually sued the Berglunds. Given State Farm's contractual duty to defend insureds against third parties, the company hired an attorney to represent the Berglunds in the lawsuit.  The case was tried and a jury awarded the Jalases $1,897,703.80 in damages, about $1.4 million more than State Farm's policy limit.   After Grinnell Mutual paid the excess insurance of $1 million, the Berglunds personally owed the Jalases about $400,000.

The Berglunds later brought this lawsuit asserting State Farm acted in bad faith. A jury agreed, based on State Farm's actions in defending the Berglunds and in

-2-

negotiating a settlement. The jury awarded damages of $515,831.42 for the excess judgment and interest, $4000 for Sally Berglund's emotional distress, and $15,000 in punitive damages. The district court denied State Farm's motion for judgment as a matter of law on the issues of bad faith and punitive damages, but granted State Farm's motion on the issue of emotional distress damages. State Farm appeals, and the Berglunds cross-appeal. We affirm the bad faith and punitive damage ruling, but reverse the emotional distress ruling.

State Farm first contends the district court erroneously denied its motion for judgment as a matter of law on the Berglunds' bad faith claim. We review the denial de novo. See Chadima v. National Fidelity Life Ins. Co., 55 F.3d 345, 347 & n.5 (8th Cir. 1995) (same standard under federal or Iowa law). In doing so, we consider the evidence in the light most favorable to the Berglunds, resolve all evidentiary conflicts in their favor, and give them the benefit of all reasonable, favorable inferences. See Norton v. Caremark, Inc., 20 F.3d 330, 334 (8th Cir. 1994). We affirm the denial if reasonable jurors could reach different conclusions from the evidence. See id.

State Farm asserts the jury could not reasonably find State Farm acted in bad faith during settlement negotiations. In Iowa, an insurer has a duty to exercise good faith in settlement negotiations. See Kooyman v. Farm Bureau Mut. Ins. Co., 315 N.W.2d 30, 33-34 (Iowa 1982). This duty arises from insurance policy provisions giving the insurer control over the settlement and trial. See id. at 32-33. When an "'insurer recognizes the probability that an adverse verdict will exceed policy limits, the boundaries of "good faith" become compressed in favor of the insured.'" See id. at 34 (quoting 7C J. Appleman, Insurance Law & Practice § 4712, at 443 (1979)). In assessing good faith, the test is whether the insurer has approached the matter of settlement as if policy limits do not exist. See id.

Before the underlying trial, the Jalases offered to settle for $1.51 million. The Berglunds had general liability insurance of $500,000 under the State Farm policy,

excess liability insurance of $1,000,000 with Grinnell Mutual, and $10,000 from their own funds contributed towards settlement. Thus, it was financially possible to settle the case. State Farm did not question the Berglunds' liability. The jury could reasonably find State Farm believed the judgment would exceed its policy limits of $500,000. State Farm's claims committee valued the claim at $200,000, but several committee members felt the claim was undervalued. Because of its uncertainty, the committee sent the claim to State Farm's bodily injury claim consultant at corporate headquarters for evaluation. He believed the case had "a great deal of explosive potential in terms of jury reaction to the very tragic situation in which the injured parties found themselves, and in order to protect [the Berglunds] . . . [State Farm] should be willing to spend the full amount of the policy limits [of] $500,000." About a month before trial, the consultant sent a memo to regional claims management advising payment of $500,000, then the consultant left on vacation. The divisional claims superintendent also believed a judgment in excess of State Farm's limits was likely. Yet the best offer communicated to the Jalases was $300,000. The jury could reasonably find State Farm did not ignore its policy limits during settlement negotiations.

Relying on Wierck v. Grinnell Mut. Reinsurance Co., 456 N.W.2d 191 (Iowa 1990), State Farm contends the Berglunds were required to show the Jalases offered to settle for an amount within State Farm's $500,000 limit, and the Berglunds failed to do so. In Wierck, only one insurance company was involved and that company offered its full policy limit to the plaintiffs, who wanted more money. See id. at 193-94. The total amount of insurance coverage and funds available from the insured could not meet the plaintiff's demand. That is not our situation. The majority of courts that have decided the issue hold that when, as here, an insured is not judgment proof or an excess insurer exists, absence of an offer to settle within policy limits is not dispositive of the question of the primary insurer's bad faith. See Delancy v. St. Paul Fire & Marine Ins. Co., 947 F.2d 1536, 1550 n.31 (11th Cir. 1991) (Georgia law) (citing cases); Kivi v. Nationwide Mut. Ins. Co., 695 F.2d 1285, 1287 (11th Cir. 1983) (Florida law); see also

Iowa Nat'l Mut. Ins. Co. v. Auto-Owners Ins. Co., 371 N.W.2d 627, 629 (Minn. Ct. App. 1985) (insurer need not settle if it believes in good faith that settlement at proposed figure it is required to contribute is greater than amount jury will award). According to these courts, an offer to settle within policy limits is just one factor to consider in deciding a primary insurer's bad faith, rather than a prerequisite to recovery. See General Accident Fire & Life Assurance Corp. v. American Cas. Co., 390 So. 2d 761, 765-66 (Fla. Ct. App. 1980). We believe the Iowa Supreme Court would adopt this view if squarely presented with the issue in our context. See Warford v. State Farm Mut. Auto. Ins. Co., 69 F.3d 860, 862 (8th Cir. 1995) (role of federal court in diversity case). To hold otherwise would relieve State Farm of its obligation to negotiate settlement in good faith to protect its insured when settlement is impossible within its own limits, but possible because of other available funds. Of course, our decision is not binding on the Iowa Supreme Court, which in its wisdom may view the matter differently. We conclude a jury could reasonably find State Farm acted in bad faith in failing to offer its limits.

State Farm also contends no reasonable jury could find State Farm's failure to offer its policy limits proximately caused the judgment over $1.5 million. State Farm blames Grinnell Mutual, even though State Farm never offered its policy limits to invoke Grinnell Mutual's excess insurance. A senior claims attorney for Grinnell Mutual testified he would not have contributed $1 million towards settlement, but Grinnell's risk reinsured supervisor testified she believed as early as a month before trial that a $800,000 verdict was a very real possibility, and the company would have contributed $300,000. Other experts testified the claim was worth more than the offered settlement of $1.51 million. Until State Farm offered its limits, however, Grinnell Mutual had no obligation to pay anything or to evaluate seriously the Jalases' claim. Further, the Jalases' attorney testified that in his experience, both he and his clients become "weak-kneed" in the face of substantial offers, and Grinnell Mutual's risk reinsured supervisor testified that about half the plaintiffs demanding over $1 million accept lesser amounts. Under the circumstances, we believe a jury could

reasonably find the case would have been settled, and State Farm's failure to offer its policy limits proximately caused the excess judgment. Thus, we need not decide whether State Farm acted in bad faith in defending the lawsuit brought by the Jalases.

State Farm next contends the district court erroneously denied its motion for judgment as a matter of law on punitive damages. State Farm asserts the jury should have been instructed that it could not award punitive damages unless State Farm's conduct was malicious, illegal, or immoral. Iowa Code § 668A.1, enacted in 1986, codifies Iowa law on punitive damages. See Vlotho v. Hardin County, 509 N.W.2d 350, 356 (Iowa 1993). Section 668A.1 provides for punitive damages when the defendant acts with "willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(a) (1997). The Iowa Supreme Court defines "willful and wanton" in § 668A.1(1)(a) as an "intentional[] . . . act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." Vlotho, 509 N.W.2d at 356 (reckless indifference standard). Punitive damages are proper when the defendant commits an intentional tort, like bad faith, and the defendant's conduct meets the standard in § 668A.1. See White v. Northwestern Bell Tel. Co., 514 N.W.2d 70, 77 (Iowa 1994).

The district court properly instructed the jury on punitive damages under Iowa law in jury instruction twenty-seven. Contrary to State Farm's contention, the evidence was sufficient to meet the Iowa standard. The jury could reasonably conclude State Farm committed acts of indifference and disregard for the Berglunds' rights during the underlying lawsuit.

Finally, State Farm contends the district court should have granted a new trial because the court improperly admitted evidence of Sally Berglund's emotional distress. The district court instructed the jury it could compensate Sally Berglund for her emotional distress as an element of damage for bad faith. The court instructed the jury on both noneconomic damage, such as pain and suffering, and economic damage, such

as medical care costs. The jury awarded Sally $4000, all for economic damage. After the trial, the district court overturned the award because the court believed the Iowa Supreme Court would not permit recovery for emotional distress as consequential damages in a third-party bad faith case. In their cross-appeal, the Berglunds contend the Iowa Supreme Court would permit recovery. We agree.

The Iowa Supreme Court has already permitted recovery of emotional distress damages on a claim that an insurer acted in bad faith by failing to pay an insured's claim. See Nassen v. National States Ins. Co., 494 N.W.2d 231, 237-38 (Iowa 1992). We see no reason to permit emotional distress damages for bad faith failure to pay a direct claim, but not for failure to exercise good faith in representing an insured against a third party. Indeed, the Iowa Supreme Court has recognized that in the third-party situation, the insurer has a clear fiduciary duty to act affirmatively in the best interest of the insured, but in the first-party context, the insurer's duty is not as rigorous. See Pirkl v. Northwestern Mut. Ins. Ass'n, 348 N.W.2d 633, 635 (Iowa 1984).

Further, most courts that have decided the issue permit recovery of emotional distress damages for breach of a liability insurer's duty to act in good faith in representing an insured against a third party. Viewing the action as sounding in both contract and tort, rather than contract alone, the courts have held an insured may prove and recover the full range of tort damages when an insurer refuses to settle with a third party in bad faith. See Crisci v. Security Ins. Co., 426 P.2d 173, 178-79 (Cal. 1967); Lira v. Shelter Ins. Co., 913 P.2d 514, 517 (Colo. 1996); Campbell v. State Farm Mut. Auto. Ins. Co., 840 P.2d 130, 139 (Utah Ct. App. 1992). In addition to recovering the amount of the verdict against the insured that exceeds policy limits, the insured may potentially recover for emotional distress, injury to reputation or credit rating, and punitive damages. See Campbell, 840 P.2d at 139. Because the Iowa Supreme Court characterizes bad faith failure to settle a third party's claim against an insured as a tort, see Pirkl, 348 N.W.2d at 635 n.2, we believe the Iowa Supreme Court would permit Sally Berglund to recoup emotional distress damages for State Farm's bad faith.

Otherwise, the Berglunds would not get a full recovery.  See Clark-Peterson Co. v. Independent Ins. Assocs., Ltd., 514 N.W.2d 912, 915 (Iowa 1994).

Some of the courts permitting recovery of emotional distress damages require the plaintiff to show an injury to property, such as payment of the excess judgment or seizure of assets, before recovering for emotional distress.  See Continental Ins. Co. v. Superior Court, 43 Cal. Rptr. 2d 374, 383-84 (Cal. Ct. App. 1995).  This requirement is meant to avoid fictitious claims, analogous to the physical injury requirement for the independent emotional distress tort.  See Crisci, 426 P.2d at 179.   If the Iowa Supreme Court would require a showing of injury to property, the Berglunds have made it. Because of the substantial excess judgment, the Jalases filed a lien on the Berglunds' farm, so the Berglunds have lost the use of their farm equity and face judicial enforcement of the lien.

In their cross-appeal, the Berglunds also contend the district court erroneously denied their motion to alter or amend the judgment challenging the awarded rate of prejudgment interest.  See Fed. R. Civ. P. 59(e).   State law governs prejudgment interest in this diversity action.  See Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co., 933 F.2d 1433, 1435 (8th Cir. 1991).  Iowa Code § 535.3 provides for 10% interest on monetary judgments from the date the action was commenced.  See id. Because the jury had already awarded 6.36% accrued interest on the excess verdict, the district court awarded prejudgment interest at a rate of 3.64% to reach the 10% statutory rate, but to avoid double recovery.  Prejudgment interest is awarded to make the claimant whole because the claimant has been denied the use of money that is legally due.  See Winter v. Cerro Gordo County Conservation Bd., 925 F.2d 1069, 1073 (8th Cir. 1991); In re Marriage of Baculis, 430 N.W.2d 399, 401 (Iowa 1988). Here, the district court awarded prejudgment interest at a rate that ensured the Berglunds received 10% total interest for the lost value of the use of the money awarded.  Because the Berglunds received compensation at the statutory rate, we conclude the district court did not abuse its discretion in denying the Berglunds'

motion.  See Twin City Const. Co. v. Turtle Mountain Band of Chippewa Indians, 911 F.2d 137, 139 (8th Cir. 1990) (standard of review).

In sum, we affirm the district court's denial of State Farm's motion for judgment as a matter of law on the issues of bad faith and punitive damages, reverse the district court's grant of judgment as matter of law on the issue of emotional distress damages, affirm the district court's denial of the Berglunds' motion to alter or amend the judgment with respect to prejudgment interest, and remand for further proceedings consistent with our opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.