Filed 5/16/23  Martin v. National Autopsy Experts, LLC CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| ANTHONY R. MARTIN, SR., | D080031 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2019-00038385 CU-BC-CTL) |
| NATIONAL AUTOPSY EXPERTS, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth Medel, Judge.  Affirmed.

James Swiderski for Defendants and Appellants.

No appearance for Respondent.

In a jury trial, Anthony Martin prevailed on his claims against National Autopsy Experts, LLC (NAE) and Julia McGrath (collectively, defendants) for breach of contract, intentional misrepresentation, and intentional concealment.  The jury awarded Martin $8,350 in economic damages for his breach of contract claim, $20,000 in non-economic damages for his intentional misrepresentation claim, and $30,000 in non-economic

damages and $83.50 in punitive damages for his intentional concealment claim. The jury found in favor of defendants on Martin's other claims.

Defendants contend on appeal that (1) the economic loss rule bars Martin's intentional misrepresentation and intentional concealment claims; (2) emotional distress damages are not recoverable under Martin's fraud claims because there was no proof of "substantial damages" apart from those due to mental distress; and (3) the trial court erred in denying defendants' motions for summary judgment.[1]

We conclude that the economic loss rule does not apply to Martin's fraud claims, and that he was entitled to recover damages for emotional distress. We further conclude that defendants have forfeited their summary judgment argument by failing to address prejudice, and alternatively, that the argument fails on the merits for failure to demonstrate prejudice. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendants have provided us with a settled statement in lieu of a reporter's transcript of the jury trial. Although the settled statement is cursory at best, it was approved by the trial court. Accordingly, we will decide the appeal based on the settled statement and trial exhibits.

In March 2018, Martin's wife Betty died unexpectedly at the age of 69. At the time, Betty had a serious heart condition and received at-home nursing visits. The afternoon before her death, her nurse administered medication intravenously and indicated she was giving Betty new medicine authorized by her cardiologist. No autopsy was conducted after Betty's

---

[1]    Because Martin filed no brief, we determine the appeal based on the record provided and defendants' opening brief. (Cal. Rules of Court, rule 8.220(a)(2).)

2

death, and county authorities determined that her cause of death was cardiac arrest.

Martin suspected that the new medication might have caused Betty's death, and he attempted, unsuccessfully, to persuade the hospital or public medical authorities to conduct an autopsy. Martin then sought out private autopsy services to determine her cause of death and provide him with closure. His daughters introduced him to Julia McGrath, NAE's sole owner and employee, after they saw NAE's website advertising its nationwide autopsy services. Martin signed a contract with NAE in August 2018 and paid the company $4,650 to conduct an autopsy and produce an autopsy report, which NAE estimated would "take up to 120 days on average to receive." He also paid the funeral home $3,700 to exhume Betty's body so that, according to the contract, NAE could make "the usual customary incision/s" and collect tissue samples and send them for testing.

Four months later, when Martin's daughter contacted McGrath to ask for the status of the report, McGrath told her that tissues from the autopsy had been sent to the Mayo Clinic for analysis. In later communications, McGrath represented that she had met with the assigned pathologist, who purportedly told her that it was a "very, very difficult case because the decomposition of tissues was extremely advanced[,]" requiring defendants to "send samples to advanced labs."

These statements by McGrath were not true. In fact, no tissue samples were ever sent for analysis. Moreover, when NAE sent a technician to Betty's exhumation to collect tissue, the technician made no incisions to open her body cavity or examine her organs, even though it was NAE's standard procedure to do so. NAE did not disclose this fact to Martin or his daughters.

3

Martin never received an autopsy report from NAE. Although McGrath eventually offered Martin a partial refund of $1,000, Martin declined to accept it. He ultimately hired another company, York Pathology, to provide an autopsy report in January 2020. But doing so required him to spend an additional $3,500 to re-exhume the body. York Pathology's report identified two likely causes of Betty's death: pulmonary embolism and sudden cardiac arrhythmia.

In the meantime, Martin retained a lawyer, who sent a letter in June 2019 on his behalf to defendants providing notice of claims under the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq. (CLRA)). The letter stated that Martin had claims based on "alleged unlawful acts and omissions in advertising, contracting for, and failing to perform autopsy and toxicology services" for Martin and his family. Martin's attorney proposed a settlement amount consisting of the $4,650 Martin paid to NAE, the $3,700 he paid to the funeral home to exhume Betty's body, and $3,500 in legal fees, for a total of $11,850. Defendants responded with a corrective offer (Civ. Code, § 1782, subd. (b)) of $8,350 to reimburse Martin for the autopsy and exhumation fees, but the offer excluded legal fees. Martin rejected the offer and filed suit in July 2019, alleging: (1) violation of the CLRA; (2) fraud in the inducement of contract; (3) breach of contract; and (4) bad faith breach of the implied covenant of good faith and fair dealing.

Defendants moved for summary judgment before trial. The trial court granted summary judgment solely in favor of McGrath as to the breach of contract claim, but otherwise denied summary judgment on all claims.

Before trial, NAE stipulated to the fact that it breached its contract with Martin. NAE also moved to exclude any evidence in support of emotional distress damages, but the court allowed Martin to testify at trial

that he suffered emotional distress because of defendants' delay and failure to perform the promised autopsy and toxicology testing. Martin also testified that his suffering was aggravated by defendants' dishonesty during the process.

The verdict forms and pre-trial briefing reflect that at some point in addressing the parties' motions in limine, the trial court re-organized Martin's claims.[2] The causes of action ultimately decided by the jury consisted of the following: (1) breach of contract as to NAE only; (2) intentional misrepresentation regarding NAE's qualifications; (3) concealment regarding NAE's qualifications; (4) intentional misrepresentation regarding the status of contract performance; (5) concealment regarding the status of contract performance; and (6) unfair or deceptive acts or practices.

The jury found in favor of Martin in his first cause of action for breach of contract, awarding him $8,350 in economic damages. It also found in his favor in his fourth cause of action for intentional misrepresentation regarding contract performance status, awarding Martin $20,000 in non-economic damages. Finally, in the fifth cause of action, the jury found that defendants intentionally concealed facts regarding the status of contract performance, and did so with malice, oppression, or fraud, and it awarded Martin $30,000 in non-economic damages and $83.50 in punitive damages.

For the second and third causes of action for fraud relating to NAE's qualifications, the jury found defendants not liable. And while the jury found

---

[2]    Defendants note in their brief that at a hearing on motions in limine, the trial court ordered Martin to split his fraud claim into separate causes of action. However, the only minute order included in the record that addresses motions in limine does not include any reference to splitting up claims. We presume, for our purposes, that the resulting verdict forms accurately reflect the court's orders.

defendants liable for the sixth cause of action for unfair or deceptive acts, the court later granted defendants' post-trial request for judgment on that claim, finding that defendants had an affirmative defense under the CLRA because their corrective offer precluded liability. The court denied defendant's motions for judgment notwithstanding the verdict as to the fourth and fifth causes of action for intentional misrepresentation and concealment relating to contract performance. Defendants timely appealed.[3]

DISCUSSION

I

Defendants first argue that the economic loss rule barred Martin's fourth and fifth causes of action for intentional misrepresentation and intentional concealment relating to contract performance. We disagree.

The economic loss rule bars a tort action, in some circumstances, in the absence of personal injury or physical damage to other property. (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 984 (*Robinson*).) The rule also generally bars claims that arise from, or are not independent of, an underlying contract between the parties. (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 923.) However, in *Robinson*, the Supreme Court reiterated its prior holding in *Erlich v. Menezes* (1999) 21 Cal.4th 543, 553–554 (*Erlich*), that tort damages are available in a case involving a breach of contract when " '(1) the breach is accompanied by a traditional common law tort, such as fraud or conversion; (2) the means used to breach the contract are tortious, involving deceit or undue coercion; or (3) one party intentionally breaches the contract intending or knowing that such a breach will cause severe, unmitigable harm in the form of mental anguish, personal hardship,

---

[3] Martin also filed a notice of cross-appeal, but we later dismissed his cross-appeal for failure to file a brief.

or substantial consequential damages.' [Citation.] Focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. [Citation.]" (*Robinson*, at pp. 989–990, quoting *Erlich*, at pp. 553–554.)

At least two of these circumstances are present here. First, Martin's breach of contract claim was accompanied by independent causes of action for fraud. (See *Jahn v. Brickey* (1985) 168 Cal.App.3d 399, 406 [emotional distress damages recoverable in contract rescission action where rescission "was only one of several causes of action and [plaintiff] also prevailed on the *tort* theories of fraud and breach of fiduciary relationship[]"].) Martin's breach of contract claim was based on the fact that NAE did not perform its contractual obligations and Martin never received the autopsy report he paid for. Separately, Martin's fraud claims were based on (1) McGrath's false representation that tissue samples were sent to the Mayo Clinic for testing even though no one had sent them, and (2) the fact that defendants did not disclose to Martin that NAE performed no surgical procedures to examine Betty's organs. Although the alleged fraud occurred during the performance of the contract, defendants' tortious conduct was independent from the breach of contract itself. Thus, the fraud claims are not barred by the economic loss rule.

The Supreme Court has recognized that public policy favors this result in cases like Martin's. " 'In pursuing a valid fraud action, a plaintiff advances the public interest in punishing intentional misrepresentations and in deterring such misrepresentations in the future. [Citation.] Because of the extra measure of blameworthiness inhering in fraud, and because in fraud cases we are not concerned about the need for "predictability about the cost of contractual relationships" [citation], fraud plaintiffs may recover "out-of-

7

pocket" damages in addition to benefit-of-the bargain damages.' [Citation.]" (*Robinson*, *supra*, 34 Cal.4th at p. 992.) "As one court stated, 'Simply put, a contract is not a license allowing one party to cheat or defraud the other.' [Citation.]" (*Ibid.*) Allowing Martin's claims for intentional misrepresentation and intentional concealment "discourages such practices in the future while encouraging a 'business climate free of fraud and deceptive practices.' [Citation.]" (*Ibid.*)

Second, the record also supports a finding that defendants intentionally breached the contract knowing that the breach would cause "severe, unmitigable harm in the form of mental anguish" or "personal hardship." (See *Robinson*, *supra*, 34 Cal.4th at pp. 989–990, quoting *Erlich*, *supra*, 21 Cal.4th at p. 554.) Courts have long recognized the potentially devastating nature of breaches in similar contexts involving the handling of remains. (See, e.g., *Christensen v. Superior Court* (1991) 54 Cal.3d 868, 894–895 ["Even in the context of an action for breach of contract, where recovery of damages solely for emotional distress resulting from a breach is not normally allowed, the provision of services related to the disposition of human remains has been distinguished because of the unique nature of the services."]; *Allen v. Jones* (1980) 104 Cal.App.3d 207, 214–215 ["Public policy requires that mortuaries adhere to a high standard of care in view of the psychological devastation likely to result from any mistake which upsets the expectations of the decedent's bereaved family."].)

According to the evidence, defendants themselves recognized the sensitivity of their autopsy services. In recognition of the personal hardship that accompanies a death in the family, McGrath offered "sincere condolences" in a letter to the "family of Betty" and wished them "comfort during this most difficult time in [their] lives." NAE's website also

acknowledged the sensitive nature of its business, stating that the company's "main concern is to provide answers and closure[,]" and that an autopsy "can provide closure to unanswered questions." NAE's website acknowledged that "[t]he sooner an autopsy is performed, more information can be discovered[]" and that the passage of time "can compromise the tissue and toxicology report due to decomposition."

The jury found not only that NAE breached its contract with Martin, but that McGrath intentionally misrepresented and concealed material facts. The jury further found, by clear and convincing evidence, that McGrath's intentional concealment was done with malice, oppression, or fraud. Martin testified that McGrath's misrepresentations caused him to suffer hurt and disappointment from being unduly delayed in discovering the cause of Betty's death, which ultimately required that her body be exhumed again. He also testified about his feelings of betrayal from defendants' fraud. If not for the misrepresentation and concealment, Martin could have immediately engaged another autopsy provider and gained some measure of closure sooner. Because of the unique nature of the underlying contract for autopsy services, and the high likelihood of mental anguish resulting from fraud in the performance of the contract, this case falls squarely within the third *Erlich* category of exceptions to the economic loss doctrine. (*Erlich, supra*, 21 Cal.4th at p. 554.)

Accordingly, we conclude that the economic loss rule did not foreclose Martin's fraud claims.

## II

Defendants next argue that emotional distress damages are not recoverable for Martin's fraud claims because there was no proof of "substantial damages" from the fraud, apart from those due to mental

9

distress. Specifically, defendants contend that to recover damages for emotional distress in connection with fraud, substantial economic damages must have resulted *directly* from the misrepresentations and omissions themselves, rather than from the related breach of contract. We disagree.

Not only do the cases defendants cite provide little support for their position, but they actually support Martin's entitlement to damages. In *Crisci v. Security Insurance Company of New Haven, Connecticut* (1967) 66 Cal.2d 425 (*Crisci*), which defendants rely upon heavily, the Supreme Court considered the propriety of awarding emotional distress damages in an insured's action against her insurer for failing to accept a settlement offer within policy limits. (*Id.* at pp. 428–429.) The Court held that "a plaintiff who as a result of a defendant's tortious conduct loses his property and suffers mental distress may recover not only for the pecuniary loss but also for his mental distress." (*Id.* at pp. 433–434.) The Court went on to state that "[n]o substantial reason exists to distinguish the cases which have permitted recovery for mental distress in actions for invasion of property rights. The principal reason for limiting recovery of damages for mental distress is that to permit recovery of such damages would open the door to fictitious claims, to recovery for mere bad manners, and to litigation in the field of trivialities. [Citation.]" (*Id.* at p. 434.) The Court referred to situations where actionable claims result in "substantial damages apart from mental distress" to point out that in such cases, "the danger of fictitious claims is reduced," and courts are "not concerned with mere bad manners or trivialities but tortious conduct resulting in substantial invasions of clearly protected interests." (*Ibid.*)

Contrary to what defendants contend, *Crisci* does not require that a fraud claim be accompanied by substantial economic damages flowing

10

directly from the fraud for emotional distress damages to be recoverable. Rather, *Crisci* merely recognized that the existence of substantial damages apart from mental distress can serve as a hallmark of a valid claim for emotional distress damages. This principle was confirmed in *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, also cited by defendants, in which the Supreme Court stated that *Crisci* limited recovery of damages for mental distress to protect against fictitious claims. (*Id.* at p. 579.)

The Supreme Court made this point again in *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 (*Molien*), when it observed that courts have "devised various means of compensating for the infliction of emotional distress, provided there is some assurance of the validity of the claim. As we have seen, physical injury . . . provides one such guarantee. [Citations.] Another arises when the plaintiff asserts an independent cause of action *apart* from personal injury." (*Id.* at pp. 926–927, italics added.) The Court quoted the "substantial damages" language in *Crisci*, then went on to conclude that requiring physical injury to prove that an emotional distress claim is genuine was "no longer justifiable." (*Molien*, at pp. 927–928.) The Court's concern in *Molien*, as in *Crisci*, was to screen for false claims while also allowing for valid ones. (See *Crisci, supra*, 66 Cal.2d at p. 434; *Molien*, at pp. 928–929.) Nowhere in these cases did the Court state that a plaintiff alleging fraud must prove substantial economic damages flowed directly from the fraudulent conduct alone before recovering for emotional distress.

Here, Martin's fraud claims go beyond accusations of mere bad manners or trivialities, and do not implicate the concern about fictitious claims identified in *Crisci* and its progeny. (See *Crisci, supra*, 66 Cal.2d at p. 434.) Not only did Martin suffer economic harm in the form of the contract damages awarded by the jury, but he suffered substantial, non-trivial, non-

11

economic harm from his discovery that defendants had been dishonest about his deceased wife's autopsy and their performance of the contract. As noted, the jury found that defendants' intentional misrepresentations and omissions regarding their treatment of Betty's remains caused significant injury to Martin and awarded him $50,000 in non-economic damages—which defendants do not claim is excessive. The jury credited Martin's testimony that he endured deep hurt, disappointment, feelings of betrayal, and lack of closure from his wife's death as a result of defendants' tortious conduct, and even awarded punitive damages. In light of governing case law and the nature of Martin's fraud allegations involving his wife's remains, we conclude that the award of emotional distress damages was proper. (See also *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.* (1981) 120 Cal.App.3d 412, 417 ["That general damages for mental pain and suffering are recoverable in a tort action of deceit is established by the cases."].)

### III

Lastly, defendants contend that the trial court erred in denying their motions for summary judgment as to Martin's fraud claims relating to both contract inducement and contract performance. We conclude that defendants have forfeited this argument by making no attempt to demonstrate prejudice, and alternatively, they would not be able to show prejudice anyway.

Although orders denying motions for summary judgment may be reviewed on direct appeal from a judgment after trial, the appellant must show the purported error was prejudicial and caused a miscarriage of justice. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343 (*FDIC*), citing *Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 (*Waller*).) Generally, an order denying a motion for summary judgment does not constitute prejudicial error if the same question was subsequently decided

12

adversely to the moving party after a trial on the merits. (*FDIC*, at p. 343.) If the same question was not decided after trial, an appellant still bears the burden of demonstrating that a miscarriage of justice has occurred. (*Waller*, at p. 833 ["Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred. [Citations.]"].) When considering whether a miscarriage of justice has occurred, "we are not to look to the particular ruling complained of in isolation, but rather must consider the full record in deciding whether a judgment should be set aside. Since we are enjoined to presume that the trial itself was fair and that the verdict in plaintiff['s] favor was supported by the evidence, we cannot find that an erroneous pretrial ruling based on declarations and exhibits renders the ultimate result unjust." (*Ibid.*)

Here, defendants fail to demonstrate how the court's denial, if erroneous, was prejudicial. Indeed, their brief is devoid of any discussion of any prejudice they suffered from the denial of summary judgment. We must assess prejudice "when *and only when* the appellant has fulfilled his duty to tender a proper prejudice argument" by "spelling out in his brief exactly how the error caused a miscarriage of justice." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106, italics added.) Our role is to evaluate " 'legal argument with citation of authorities on the points made.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Because defendants have failed to make proper arguments to demonstrate prejudice, they have forfeited their summary judgment argument.

Even if defendants had adequately raised the issue, they would not be able to demonstrate any prejudice from the court's denial of their summary judgment motion. As to Martin's fraud claims relating to contract inducement, the jury ultimately found in defendants' favor. Even if the court

13

had granted summary judgment on those two causes of action, defendants would have had to proceed to trial on Martin's surviving claims, and they would still be faced with an adverse judgment. (Cf. *Waller*, *supra*, 12 Cal.App.4th at p. 833 [rejecting as insufficient defendant's argument that it was prejudiced because "if its summary judgment motion had been granted, the matter would have been terminated in its favor at that point, there would have been no trial and it would not now be faced with an adverse judgment"].)

For Martin's claims relating to fraud in the performance of the contract, as discussed above, the economic loss doctrine did not bar those claims and they were subsequently decided adversely to defendants after trial. (See *Waller*, *supra*, 12 Cal.App.4th at p. 833; *FDIC*, *supra*, 167 Cal.App.4th at p. 343.) Defendants therefore can show no miscarriage of justice resulting from the trial court's denial of summary judgment as to those causes of action. (See *South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 908 [reversal unwarranted where there was no indication in the record that the court's denial of summary judgment motions, "even if erroneous, rendered unjust the judgment entered after full trial on the merits[]"].) Accordingly, we conclude that the court did not prejudicially err in denying summary judgment.

DISPOSITION

The judgment is affirmed.  Martin is awarded his costs on appeal, excluding costs associated with his abandoned cross-appeal.


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.